STATE OF NORTH CAROLINA

DURHAM COUNTY

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Case No. _____

LESLIE SMITH individually and on behalf of
all others similarly situated,

2020 JUL -1 P 2: 55

DURHAM CO., C...

Plaintiff,

BY _____ CS

v.

PEAK PROPERTY AND CASUALTY
INSURANCE CORPORATION,

Defendant.

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Leslie Smith ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Peak Property and Casualty Insurance Corporation ("Peak Property" or "Defendant"), and in support states:

### NATURE OF THE ACTION

1.  This is a class action lawsuit by Plaintiff, the named insured under a Peak Property automobile policy issued for private passenger auto physical damage including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or "ACV."

2.  Defendant is one of the largest private passenger auto insurance carriers operating in North Carolina. One of the coverages Defendant offers is comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid not just Plaintiff, but thousands of other putative class members, amounts Defendant owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3.  This lawsuit is brought by the Plaintiff individually and on behalf of all other similarly situated insureds who suffered damages due to Defendant's practice of refusing to pay

full ACV payments to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendant fails to include North Carolina's 3% highway-use tax ("Sales Tax") in its calculation of ACV when making a total loss payment to its insureds.

4. The failure to pay full ACV to first-party total losses owed to the insureds is a breach of the policy agreement and a clear breach of contract under North Carolina law.

## JURISDICTION AND VENUE

5. This is an action for declaratory relief and breach of contract for damages in excess of $25,000 exclusive of interest, costs, and attorneys' fees.

6. At all material times, Plaintiff was an adult resident and citizen of the State of North Carolina.

7. This Court has personal jurisdiction over Defendant because the Defendant is and was a corporation located in the State of North Carolina, and authorized to transact insurance in the State of the North Carolina and conducting a substantial part of its business in the State of North Carolina.

8. Venue is proper in this Court pursuant to N.C. Gen. Stat. §1-80 because Defendant is a foreign corporation that frequently does business in Durham County by underwriting policies for residents of this County as well as through agents that are based in Durham County.

## PARTIES

9. At all times material hereto, Plaintiff was a citizen of the State of North Carolina and domiciled in Cumberland County.

10. At all times material hereto, Defendant is and was authorized to transact in the

2

insurance business in the State of North Carolina and conducted a substantial part of its business in Durham County, North Carolina.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

11.     Defendant's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in every auto policy issued by the Defendant in North Carolina.

12.     In the case of a total loss, full ACV includes an obligation to pay Sales Tax and the North Carolina title transfer and license plate fees ("Vehicle Title and Registration Fees") for total loss vehicle comprehensive and collision coverage.

13.     At all times material hereto, Plaintiff owned a 2008 Lexus RX with VIN 2T2HK31U88C080399 ("Insured Vehicle").

14.     At all times material hereto, Plaintiff insured the vehicle under an automobile insurance policy ("Insurance Policy") issued by Defendant.  Plaintiff's Insurance Policy and Declaration Page are attached hereto as composite Exhibit A.

15.     On or about December 19, 2018, Plaintiff was involved in an accident while operating the Insured Vehicle.  As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number 97A381210-356.

16.     Following the filing of the claim, Defendant determined that the Insured Vehicle was a total loss with a base value of $9,773.00.

17.     The base value was calculated for Defendant by a third-party vendor ("CCC"), which bases vehicle valuations on the cost to purchase similar vehicles with similar conditions and mileage, which produced the CCC Market Valuation Report, attached hereto as Exhibit B.

18.     CCC then deducted $60.00 as a condition adjustment and determined that the

Adjusted Vehicle Value was $9,713.00. See id.

19.     CCC then added $291.39 for the applicable 3% North Carolina vehicular tax and concluded that the total value was $10,004.39. See id.

20.     Relying on the CCC Valuation Report, Defendant used the Adjusted Vehicle Value of $9,713.00, subtracted an additional $84.99 for "Unrelated Prior Damage" (an amount in addition to the $60 deducted by CCC as a "condition adjustment"), added $72.00 in fees, subtracted $115.00 for "Keys" and then subtracted the deductible of $500.00 for a net total payment of $9805.01.[1] A copy of the Settlement Statement is attached hereto as Exhibit C.

21.     Although CCC included Sales Tax as part of its total value, Defendant did not include Sales Tax as part of its ACV payment.

22.     The failure to include Sales Tax in making the total loss payment to Plaintiff is a breach of the Insurance Policy, which promises to provide the full value of the total loss vehicle, including Sales Tax.

23.     Sales Tax and Vehicle Title and Registration Fees are all mandatory applicable fees that must be paid to purchase any vehicle in the State of North Carolina.

24.     North Carolina law requires that all vehicles be properly titled and registered to be legally driven on North Carolina roadways. The fee to transfer title to a vehicle is, at minimum, $52.00.

25.     North Carolina law requires that all vehicles have proper license plate (or tag) to be legally driven on North Carolina roadways. The fee to transfer a license plate or tag is no less than $20.

26.     North Carolina law requires that all vehicles be subject to a Sales Tax of 3%.

---

[1] The Settlement Statement indicated, in error, that Plaintiff was owed $908,501.00. Plaintiff was paid $9,805.01.

4

27.     Plaintiff was owed, at minimum, $288.84[2] in Sales Tax, which Defendant never paid.

28.     In breach of its contract with Plaintiff, Defendant did not include Sales Tax in making the ACV payment for Plaintiff's total loss.

29.     Defendant, pursuant to its standard and uniform business practice, never pays insureds' Sales Tax after a total loss to an insured vehicle to insureds similarly situated to Plaintiff.

30.     Defendant's failure to pay Sales Tax constitutes a breach of the Insurance Policy.

31.     In doing so, Defendant underpaid Plaintiff in the amount of the mandatory costs inherent to securing a replacement vehicle, thereby violating the Insurance Policy.

32.     Plaintiff and all members of the putative class paid all premiums owed and otherwise satisfied all conditions precedent, or such conditions precedent were waived or excused.

## THE PEAK PROPERTY INSURANCE POLICY

33.     Plaintiff's Insurance Policy, which is representative of the policy language governing the insureds in the putative class, under the section entitled "PART D – COVERAGE FOR DAMAGE TO YOUR AUTO", states that Defendant "will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including their equipment." Ex. A at 10 of 16 (emphasis in original).

34.     The "covered auto" is defined as "[a]ny vehicle shown in the Declarations." Ex. A

---

[2] This amount represents 3% of the "Revised" Adjusted Vehicle Value of $9,628.00. While the CCC report shows Sales Tax due in the amount of $291.39, this amount is based on a higher Adjusted Vehicle Value of $9713.00 (See Exhibit B). Defendant further reduced the Adjusted Vehicle Value by $84.99 for "unrelated prior damage" (See Exhibit C). Plaintiff does not contest Defendant's valuation of the amount of loss for the Insured Vehicle, only Plaintiff's entitlement to ACV, which includes the payment of Sales Tax, which Plaintiff was not paid.

5

at 1 of 16.

35.     In "Part D" of the insurance policy, under a subsection entitled "Limit of Liability", Defendant states, in relevant part:

Our limit of liability will be the lesser of the:

    1.     Actual cash value of the stolen or damaged property; or

    2.     Amount necessary to repair or replace the property with other property of like kind and quality.

*** 

An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

Ex. A at 12 of 16.

36.     ACV is not specifically defined in the policy.

37.     Thus, the policy language does not further define ACV as including: (1) any provision excluding Sales Tax or Vehicle Title and Registration Fees from ACV; or (2) any provision deferring payment of Sales Tax or Vehicle Title and Registration Fees for any purpose whatsoever.

38.     The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed, or leased.

## PAYMENT OF MANDATORY FEES

39.     Courts throughout the country have recognized that "actual cash value", when undefined in an insurance policy, should be defined as the repair or replacement cost minus depreciation – a definition which would include fees necessarily incurred upon replacement of the insured vehicle, including Sales Tax and Vehicle Title and Registration Fees.

40.     Sales Tax and Vehicle Title and Registration Fees are examples of elements constituting the full ACV owed to insureds in the event of a total loss.

6

41.     By operation of law and in the view of a reasonable insured, Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle.  Otherwise, the Defendant's insureds, including Plaintiff, are not paid the amount sufficient to purchase a replacement vehicle.

42.     Nevertheless, Defendant declines to include Sales Tax in making ACV payments to total loss insureds thereby breaching its contracts with insureds.

## CLASS ALLEGATIONS

43.     Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Rule 23 of the North Carolina Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

44.     Plaintiff seeks to represent on a class-wide basis all persons similarly situated, the class ("Class") defined as follows:

> All insureds, under any North Carolina policy issued by Peak Property and Casualty Insurance Corporation and its subsidiaries with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the applicable statute of limitations period until the date of class certification, who were not paid full ACV.

45.     Excluded from the Class are Defendant, its subsidiaries and affiliates, its officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

46.     Plaintiff reserves the right to modify or amend the definition of the proposed

7

Class and/or to add subclasses if necessary before this Court determines whether certification is appropriate.

**A.** **Numerosity**

47.     Although the precise number of Class members are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurers in the State of North Carolina and writes hundreds of millions of dollars of private-passenger physical damage coverage premiums, the Class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the Class of persons affected are otherwise so numerous that joinder of all Class members is impractical.   The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized Insurance Policy language, and results in the retention by Defendant of insurance benefits properly owed to Plaintiff and the Class members. The Class definition will permit the court to reasonably ascertain whether any individual or entity is a member of the Class as any individual who is an insured of Defendant in the Class period and received an ACV that did not include Sales Tax will be a member of the Class.

48.     Upon information and belief, Defendant uniformly fails to pay Sales Tax in total loss cases. Accordingly, the Class consists of many thousands, if not tens of thousands, of Defendant's insureds who were not paid in violation of their insurance policies.  Thus, the large size of the Class renders the Class so numerous that joinder of all individual members is impracticable.

**B.** **Commonality**

49.     Common questions of law and fact predominate in this matter because Defendant's conduct towards the members of the Class is identical. Defendant uniformly fails to

8

pay Sales Tax in total loss cases.

50.     Plaintiff shares a common interest with all members of the putative Class in the objects of the action and the relief sought.

51.     Plaintiff satisfies the commonality requirement because all claims arise from a practice which Defendant applies uniformly to all its similarly situated Class members and are based on the same legal theories as all other members of the putative Class, that failing to pay Sales Tax in total loss cases violates the uniform insurance policies. Because Defendant's conduct was uniform as to all Class members, the material elements of Plaintiff's claims and those of absent Class members are subject to common proof, and the outcome of Plaintiff's individual actions will be dispositive for the Class. The common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the Class members are owed ACV Sales Tax upon the total loss of an insured vehicle; (b) whether the Defendant has breached its insurance contracts with the Plaintiffs and the Class members by failing to pay ACV Sales Tax upon the total loss of an insured vehicle; (c) whether Defendant's routine failure to pay full ACV to Plaintiff and each Class member violated N.C.G.S. § 58-63-15(11) (f), (g), and (h); and (d) whether Defendant violated N.C.G.S. §75-1.1, *et seq.* by not intending to pay full ACV in the event of a claim by Plaintiff and each Class member at the time Plaintiff and each Class member obtained his/her respective policy from Defendant.

C.  **Typicality**

52.     Plaintiff's claims are typical of the claims of all other members of the Class because all such claims arise from the Defendant's failure to pay Sales Tax on total loss claims of insured vehicles.

9

53.     Plaintiff's and Class members' legal claims arise from the same core practices, namely, the failure to pay full ACV, including Sales Tax, for first-party total loss claims. The material facts underlying the claims of each putative Class member are the same material facts as those supporting the Plaintiff's claims alleged herein and require proof of the same material facts.

**D. Adequacy**

54.     Plaintiff can and will adequately represent the putative Class and Plaintiff's interests are common to, and coincident with, those of all absent Class members. By proving her individual claims, Plaintiff will necessarily prove the claims of the putative Class and prove Defendant's liability to the Class. Plaintiff has no known conflicts of interest with any members of the Class; her interests and claims are not antagonistic to those of any other Class members; nor are her claims subject to any unique defenses.

55.     The representative Plaintiff therefore can and will fairly and adequately protect and represent the interests of the Class.

56.     Kopelowitz Ostrow Ferguson Weiselberg Gilbert; Edelsberg Law P.A., Shamis & Gentile, P.A., Dapeer Law, P.A. and Whitfield Bryson LLP, Plaintiff's counsel, have extensive experience in complex commercial litigation, class actions, and have adequate financial resources to ensure that the interests of the Class will not be harmed.

57.     If appointed Class representative, Plaintiff is aware of, and is committed to, faithfully uphold her fiduciary duties to absent Class members. Plaintiff and her counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the Class is fairly represented.

58.     Plaintiff and her counsel will therefore fairly and adequately assert and protect the

interest of the Class.

**E.  Predominance and Superiority**

59.     A class action provides a fair and efficient method for the adjudication of this controversy. Class treatment is a superior form of adjudication than the prosecution of individual claims and provides a substantial benefit to the court and litigants by avoiding a multiplicity of suits, and the risk of inconsistent results.

60.     Because Defendant's conduct was uniform with respect to all prospective Class members, common questions of law and fact predominate over individual questions.

61.     Because the Class encompasses many thousands of claims (if not tens of thousands of claims), a single, state-wide class action is plainly more efficient than many thousands of individual lawsuits, each requiring the same discovery and proofs. Given the relatively small amount of the claim(s) of each putative Class member, it is likely that absent class representation, such claims would not be brought, and the Class would never have appropriate redress for Defendant's improper conduct. A class action is superior and more efficient to other available methods for the fair and efficient adjudication of this controversy.

62.     Class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

63.     In addition, the expense and burden of individual litigation effectively makes it a practical impossibility for individual Class members to seek redress for the wrongs alleged herein.

11

64.     The advantages of maintaining this action as a class suit far outweigh the expense and waste of judicial effort that would result from thousands of separate adjudications or the unfairness of none at all, which is the likely outcome if the small individual claims at issue are not aggregated as a Class.

65.     There are also no unusual difficulties likely to be encountered in the maintenance of this action as a class suit, and this Court can effectively manage the class action.

66.     The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants because Defendant keeps records of insurance policies and claims of prospective Class members during the class period, including records of total loss vehicles. Therefore, both the membership of the Class and the amount of individual damages is readily ascertainable from Defendant's records.

## F. Declaratory Relief Under Rule 23

67.     Class treatment is warranted because Defendant has acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

68.     Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

69.     Because Defendant has acted consistently towards all members of the Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

70.     Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

71.     Plaintiff has retained the undersigned counsel and has agreed to pay reasonable attorney's fees and costs.

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>

72.     The allegations in paragraph 1 through 71 are hereby incorporated by reference.

73.     This count is brought by Plaintiff individually and on behalf of all members of the Class.

74.     Plaintiff was party to substantially similar form contracts, the Insurance Policy, with Defendant as described herein.  See <u>Composite Exhibit A</u>.  All members of the Class are or were parties to an Insurance Policy contract with Defendant containing materially identical terms.

75.     North Carolina law governs the interpretation and construction of insurance policies of Plaintiff and all members of the Class with Defendant.

76.     Plaintiff and all members of the Class made claims determined by Defendant to be first party total losses under the Insurance Policy and determined by Defendant to be covered claims.

77.     Defendant, in paying the total loss claims, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the insurance policies necessary to be paid on the total loss.

78.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiffs and every Class member were owed the ACV of the vehicle.

79.     Defendant breached that obligation by failing to include Sales Tax in the ACV

13

payment, thereby failing to pay the vehicle's full ACV to Plaintiff and every Class member.

80.    Defendant's failure to provide the promised coverage constitutes a material breach of contracts with Plaintiff and every Class member.

81.    As a result of said breaches, Plaintiff and the Class members have been damaged in an amount in excess of twenty five thousand dollars ($25,000) and are entitled under Defendant's insurance policies to sums representing the benefits owed for full ACV payment, including Sales Tax, as well as prejudgment and post-judgment interest, and other relief as is appropriate.

## COUNT II
## DECLARATORY RELIEF

82.    The allegations in paragraph 1 through 71 are hereby incorporated by reference.

83.    This count seeks declaratory relief pursuant to G.S. § 1-253, *et seq*.

84.    This count is brought by Plaintiff individually and on behalf of all members of the Class.

85.    Plaintiff was a party to substantially similar form contracts, the Insurance Policy, with Defendant as described herein.  See <u>Composite Exhibit A</u>.  All members of the Class are or were parties to an Insurance Policy contract with Defendant containing materially identical terms.

86.    North Carolina law governs the interpretation and construction of Plaintiff and all Class members' insurance policies with Defendant.

87.    Plaintiff seeks a declaratory judgment that an insured is entitled to Sales Tax as part of her vehicle's ACV total loss payment under the insurance policies that govern Plaintiff's and the Class members' contractual relationships with Defendant.

88.    Plaintiff contends Defendant is required to pay Sales Tax as part of her vehicle's

14

ACV total loss payment under the insurance policies that govern Plaintiff and the Class members relationship with Defendant.

89.     Defendant disagrees with Plaintiff's interpretation of the Insurance Policy.

90.     Because of Defendant's claim to the contrary, Plaintiff is in doubt as to her rights under the Insurance Policy.

91.     The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiff and Defendant as to entitlement to the Sales Tax.

92.     The above allegations reflect that Plaintiff have presented a justiciable question as to the existence of her right to the Sales Tax.

93.     All antagonistic and adverse interests, namely Plaintiff and Defendant and the Class when certified, are before this Court by the filing of this count.

94.     Pursuant to G.S. § 1-253, *et seq.*, Plaintiff is entitled to a declaration of her right to the Sales Tax to resolve her doubt about her rights under the Insurance Policy considering the Defendant's position otherwise.

95.     Upon the Court granting Plaintiff the declaratory relief requested herein, Plaintiff will move the Court pursuant to G.S. § 1-259 for supplemental relief in the form of an order directing that the Sales Tax be paid to Plaintiff, and the Class, if certified, as well as a judgment for prejudgment interest and post-judgment interest, as the Sales Tax represents a liquidated amount.

## COUNT III
## VIOLATION OF THE NORTH CAROLINA
## UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
## G.S. § 75-1.1, *et seq.*

96.     The allegations in paragraph 1 through 71 are hereby incorporated by reference.

97.     This count seeks relief pursuant to North Carolina's Unfair And Deceptive Trade

Practices Act, G.S. § 75-1.1, *et seq.* ("UDTPA")

98.     This count is brought by Plaintiff individually and on behalf of all members of the Class.

99.     Defendant's acts, as alleged herein, were acts in or affecting commerce, violate the provisions of N.C.G.S. § 58-63-15, and constitute unfair and deceptive trade practices in violation of N.C.G.S. §§ 75-1.1 *et seq.*

100.     Defendant's conduct and practices toward Plaintiff and each Class member was immoral, unethical, unscrupulous, or substantially injurious. Moreover, Defendant engaged in conduct manifesting an inequitable assertion of its power or position, making its conduct an unfair act or practice.

101.     In settling Plaintiff's and each Class member's total loss claims by not paying the full ACV, Defendant violated provisions of N.C.G.S. § 58-63-15(11) which amount to violations of N.C.G.S. §75-1.1, as a matter of law.

102.     Specifically, by routinely not paying the full ACV, Defendant's settlement practices violated N.C.G.S. § 58-63-15(11) (f), (g), and (h).

103.     Defendant violated N.C.G.S. § 58-63-15(11)(f) because it did not attempt in good faith to effectuate fair and equitable settlements with Plaintiff and each Class member because it did not pay the full ACV, which it was obligated to do.

104.     Defendant violated N.C.G.S. § 58-63-15(11)(g) because its routine practice of not paying the full ACV to Plaintiff and each Class member forced them to institute this litigation to recover the full ACV to which they are entitled.

105.     Defendant violated N.C.G.S. § 58-63-15(11)(h) because its routine practice of not paying the full ACV resulted in Defendant settling the claims of Plaintiff and each Class member

16

for less than what a reasonable person would have believed she was entitled, which is the amount sufficient to purchase a replacement vehicle.

106.    Because of its routine business practice of not paying full ACV, at the time that Plaintiff and each Class member obtained an insurance policy from Defendant, Defendant knew that it would not pay the full ACV in the event a claim was made by Plaintiff and each Class member.

107.    The matters alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiffs and each member of the Class.

108.    Plaintiff and the Class suffered actual injury as the proximate result of Defendant's unfair actions. Such injury consists of the Defendant's failure to pay full ACV for first-party total losses owed to the insureds as will be shown at trial of this action.

109.    Plaintiff and each member of the Class have been damaged and are entitled to recover treble damages, costs, and attorneys' fees incurred in this action.

110.    Defendant's unfair and deceptive trade practices have directly and proximately caused Plaintiff and the Class damages in an amount in excess of twenty five thousand dollars ($25,000) plus costs and expenses as allowed by law.

111.    By reason of the foregoing, Plaintiff and each member of the Class is entitled to have the damages trebled and have the costs of this action, including reasonable attorney's fees, taxed against Defendant pursuant to N.C.G.S. §§ 75-16 and 75-16.1.

## **RELIEF REQUESTED**

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, demand a trial by jury on all triable issues and seeks relief and judgment as follows:

1.    For an Order certifying this action as a Class Action on behalf of the Class

17

described above;

2. For an award of compensatory damages for the Class in amounts owed under the Policies;

3. For declaratory relief to be entered for Plaintiff and the Class that her interpretation of the Insurance Policy is correct, thereby requiring Defendant to pay Sales Tax;

4. Treble damages and attorney's fees for unfair and deceptive trade practices as provided in N.C. Gen. Stat. §§ 75-16 and 75-16.1;

5. For all other damages according to proof;

6. For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

7. For costs of suit incurred herein;

8. For pre and post judgment interest on any amounts awarded;

9. For other and further forms of relief as this Court deems just and proper.

Dated: July 1, 2020                                Respectfully submitted,

Daniel K. Bryson, Bar No. 15781
Jeremy R. Williams, Bar No. 48162
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
dan@whitfieldbryson.com
jeremy@whitfieldbryson.com

**KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT**
Jeff Ostrow (*pro hac vice* to be filed)

18

ostrow@kolawyers.com
Jonathan Streisfeld (*pro hac vice* to be filed)
streisfeld@kolawyers.com
Josh Levine (*pro hac vice* to be filed)
levine@kolawyers.com
1 W. Las Olas Blvd.
Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-449-4602

**EDELSBERG LAW, P.A.**
Scott Edelsberg (*pro hac vice* to be filed)
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

**SHAMIS & GENTILE, P.A.**
Andrew Shamis (*pro hac vice* to be filed)
ashamis@shamisgentile.com
14 N.E 1st Ave Ste. 1205
Miami, FL 33132
Telephone: 305-479-2299

**DAPEER LAW, P.A.**
Rachel Dapeer (*pro hac vice* to be filed)
rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223

*Counsel for Plaintiff and Putative Class*

19

# EXHIBIT A

SUPERIOR INSURANCE OF PINEHURST
PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION
1842 N SANDHILLS BLVD
ABERDEEN NC 28315-2336

Phone: 1-910-725-0753
Agency Code: 1193990



My.DairylandInsurance.com

# DECLARATIONS PAGE

| | |
|---|---|
| **Policy Number** | ████4656 |
| **Policy Term** | 11/02/2018 to 11/02/2019 |
| **Transaction Effective** | 11/02/2018 |
| **Transaction Type** | New Business |
| **Policy Type** | Auto Ceded |

Named Insured(s)

SMITH, LESLIE
████████
FAYETTEVILLE NC ████████

## This Is Not a Bill. Retain for your records.

## Premium and Coverage Information

| Vehicle Level Coverages | Limits | Vehicle 1 | Vehicle 2 | Vehicle 3 |
|---|---|---|---|---|
| Rated Driver | | | | |
| Bodily Injury Liability | $30,000 Each Person/$60,000 Each Accident | $311.64 | $309.56 | $309.56 |
| Property Damage Liability | $25,000 Each Accident | $351.64 | $348.55 | $348.55 |
| Other Than Collision | | $407.00 | $177.00 | $253.00 |
| Collision | | $2,348.00 | $767.00 | $1,036.00 |
| Extended Transportation Expenses | $30 Increased Limits Per Day/$900 Maximum | $20.00 | $20.00 | $20.00 |
| Towing and Labor Costs | $100, $100, $100, Per Disablement | $6.00 | $6.00 | $6.00 |
| **Subtotal Premium By Vehicle** | | $3,444.28 | $1,628.11 | $1,973.11 |

| Deductibles Per Coverage Per Vehicle | Vehicle 1 | Vehicle 2 | Vehicle 3 |
|---|---|---|---|
| Other Than Collision | $500 | $500 | $500 |
| Collision | $500 | $500 | $500 |

| Policy Level Coverages | Limits | Deductible | Premium |
|---|---|---|---|
| Uninsured Motorist Bodily Injury | $30,000 Each Person/$60,000 Each Accident | | $32.00 |
| Uninsured Motorist Property Damage | $25,000 Each Accident | $100 | $5.00 |

| | |
|---|---|
| **Subtotal Premium By Policy** | $37.00 |

| Premium Summary | |
|---|---|
| **Premium Subtotal** $7,082.50 | |
| **New Business Policy Fee** $48.00 | |
| **Total Policy Premium** $7,130.50 | |

## Discount Information

| Policy Level |
|---|
| Multi-Car Discount |

## Vehicle Information

| Veh # | Year | Make | Model | VIN | Existing Damage | Vehicle Location | Vehicle Use |
|-------|------|------|-------|-----|-----------------|------------------|-------------|
| 1 | 2014 | Cadillac | ATS LUXURY | 1G6AB5RX4E0111561 | N | 28314 | P |
| 2 | 2013 | Hyundai | ELANTRA GLS/ELANTRA | 5NPDH4AE2DH431640 | N | 28314 | P |
| 3 | 2008 | Lexus | RX 350 AWD | 2T2HK31U88C080399 | N | 28314 | P |

## Driver Information

| Drv # | Name | Date of Birth | Gender | Marital Status | License State | License Number | Financial Responsibility | Experience | Date First Licensed | List Only |
|-------|------|---------------|--------|----------------|---------------|----------------|--------------------------|------------|---------------------|-----------|
| 1 | SMITH, LESLIE | 01/31/1965 | M | M | NC | 28673869 | | 34 | 02/09/1984 | N |
| 2 | SMITH, ANTIONETTE | 01/19/1963 | F | M | NC | 35276012 | | 37 | 10/20/1981 | N |
| 3 | PARKER, TRYKEATA | 02/18/1982 | F | S | NC | 29532757 | | 18 | 02/22/2000 | N |
| 4 | COLE, KENDRA | 09/06/1950 | F | S | NC | 26219581 | | 47 | 09/15/1971 | N |
| 5 | SMITH, BRANDON | 01/26/1991 | M | S | NC | 31318927 | | 8 | 01/05/2010 | N |

## Accident and Violation Information

| Drv # | Date of Occurrence | Date of Conviction | Type | Points | Description of Occurrence |
|-------|--------------------|--------------------|------|--------|---------------------------|
| 5 | 09/01/2016 | | Accident | 1 | Accident-PD $2300 or less or BI $1800 or less |
| 5 | 09/14/2017 | 03/28/2018 | Violation | 1 | Speeding |

## Lienholder/Additional Insured/Additional Interest/Business Insured Designee Information

| Veh # | Type | Name | Address |
|-------|------|------|---------|
| 2 | Lienholder | AMERICAN CREDIT ACCEPTANCE | PO BOX 1537 |
| | | | CARMEL, IN 46082 |
| 3 | Lienholder | CAPITAL ONE AUTO FINANCE | PO BOX 390907 |
| | | | MINNEAPOLIS, MN 55439 |

## Policy Forms

The following policy forms and endorsements apply to your policy.

| | | |
|---|---|---|
| NC0001-0605 | NC0301-0787 | NC0302-0199 |
| NC0303-0995 | NC0327-0508 | NC0305-0698 |
| NCA1101-0817 | NC0013-1018 | |

## Important Messages

This policy is effective on the date shown on the face of these declarations. These declarations form a part of the policy.

Access your policy documents online at My.DairylandInsurance.com.

If you choose to cancel this policy before the term expiration date, any refund due to you is subject to a cancellation penalty.

002/02000437/337/3322931480070-4

Case 1:20-cv-00907-CCE-JEP     Document 3     Filed 10/02/20     Page 22 of 65

# AMENDATORY ENDORSEMENT

This endorsement is a part of your policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement.

## 1. DEFINITIONS

A. The definition of **"newly acquired auto"** is amended as follows:

**"Newly acquired auto"** means any of the following types of vehicles you become the owner of during the policy period:

1. a private passenger auto or station wagon type; or

2. a pickup truck or van that:

   a. has a Gross Vehicle Weight as specified by the manufacturer of less than 14,000 pounds; and

   b. is not used for the delivery or transportation of goods and materials unless such use is;

      (1) incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

      (2) for farming or ranching.

Any coverage for a **newly acquired auto** is subject to the following:

1. If a **newly acquired** auto replaces a vehicle shown in the Declarations, it will have the same coverage as the vehicle it replaced except that coverage, if any, under Part D – Coverage For Damage To Your Auto applies only if you ask us to insure it within 30 days after you become the owner.

2. If a **newly acquired** auto is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations if you ask us to insure it within 30 days after you become the owner.

3. Coverage under this policy terminates for any **newly acquired** auto on the effective date and time of a policy (other than this policy) issued by us or any other company that describes such vehicle on its declarations page.

4. If you ask us to insure a **newly acquired** auto within the applicable specified time period described in 1. or 2. above, any coverage we provide for the **newly acquired** auto begins on the date you become the owner. If you ask us to insure a **newly acquired** auto after the applicable specified item period described above has elapsed, any coverage we provide for the **newly acquired** auto will begin at the time you request the coverage. You must pay us any added amount due for any coverage we provide for a **newly acquired auto.**

B. The definition of **"transportation network**

platform" is added:

**"Transportation network platform"** means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

## 2. Part A - LIABILITY COVERAGE

A. Part A is amended as follows:

1. Exclusion A.2. is deleted and replaced by the following:

   We do not provide Liability Coverage for any **Insured**:

   2. For **property damage** to property:

      a. owned in whole or in part by that **insured**; or

      b. being transported by that **insured;**

2. Exclusion A.5. is deleted and replaced by the following:

   We do not provide Liability Coverage for any **Insured**:

   5. For that **Insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public livery or conveyance. This includes **but** is not limited to any period of time that **Insured** is logged into a **transportation** network **platform** as a driver, whether or not a passenger is **occupying** the vehicle.

      This exclusion does not apply to a share-the-expense car pool.

3. The following Exclusion B.3. is added:

   We do not provide Liability Coverage for the ownership, maintenance or use of:

   3. Any vehicle while participating in any prearranged, organized, or spontaneous:

      a. racing contest, speed contest, demolition, stunt activity, or competitive driving event, or in practice or preparation for any such contest or use of this type; or

      b. use of a vehicle at a facility designed for racing or high performance driving unless such use is for an activity other than high performance driving, high speed driving, and other than those activities listed in 3.a. above.

   This exclusion applies only to the extent that the limit of liability of this policy exceeds the minimum limit required by the financial responsibility law of North Carolina.

B. The following provision is added following the **Other Insurance** provision:

002/0200043173377332293148007G4

**Appraisal - Diminution in Value**

If there is no dispute between the claimant and us regarding the insured's liability for the property damage to the claimant's vehicle, but:

a. the claimant and we fail to agree as to the difference in fair market value of the vehicle immediately before the accident and immediately after the accident; and

b. the difference in the claimant's and our estimate of the diminution in fair market value is greater than two thousand dollars ($2,000) or twenty-five percent (25%) of the fair market retail value of the vehicle prior to the accident as determined by the latest edition of the National Automobile Dealers Association Pricing Guide Book or other publications approved by the Commissioner of Insurance, whichever is less; then

on the written demand of either the claimant or us, the dispute regarding the amount of the diminution in value shall be determined by appraisal in accordance with **G.S.** 20-279.21(d1).

3. **Part B – MEDICAL PAYMENTS COVERAGE**

Exclusion 1. Is deleted and replaced by the following:

We do not provide Medical Payments Coverage for any **insured** for **bodily injury:**

1. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This includes **but** is not limited to any period of time that **insured** is logged into a **transportation** network platform as a driver, whether or not a passenger is **occupying** the vehicle.

This exclusion does not apply to a share-the-expense car pool.

The following Exclusion 12. is added:

We do not provide Medical Payments Coverage for any **Insured** for **bodily Injury:**

12. Sustained while **occupying** any vehicle participating in any prearranged, organized, or spontaneous:

**a.** racing contest, speed contest, demolition, stunt activity, or competitive driving event, or in practice or preparation for any such contest or use of this type; or

b. use of a vehicle at a facility designed for racing or high performance driving unless such use is for an activity other than high performance driving, high speed driving, and other than those activities listed in 12.a. above.

4. **Part C1 - UNINSURED MOTORISTS COVERAGE**

A. Part C1 is amended as follows:

A. Exclusion A.2. is deleted and replaced by the following:

We do not provide Uninsured Motorists Coverage for **property damage** or **bodily Injury** sustained by any **Insured:**

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This includes **but** is not limited to any period of time that **Insured** is logged into a **transportation** network **platform** as a driver, whether or not a passenger is **occupying** the vehicle.

This exclusion does not apply to a share-the-expense car pool.

B. The third paragraph of the **Limit of Liability** is deleted and replaced by the following:

The limits of bodily injury liability shown in the [Schedule or] Declarations for each person and each accident for this coverage shall be reduced by all sums:

1. Paid because of the **bodily Injury** by or on behalf of persons or organizations who may be legally responsible. This includes **all** sums paid under Part A; and

2. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

The most we will pay for **bodily Injury** damages to an **Insured** under this coverage is the lesser of:

1. the limit of bodily injury liability shown in the [Schedule or] Declarations for each person for this coverage reduced by all sums described in items 1. and 2. of the preceding paragraph; or

2. the damages sustained by the **Insured** for **bodily Injury** reduced by:

a. **all** sums described in items 1. and 2. in the preceding paragraph; and

b. **all** sums paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law.

The limit of property damage liability under this coverage shall be reduced by all sums paid because of the **property damage** by or on behalf of persons or organizations who may be legally responsible. This includes all sums payable under Part A.

C. The first paragraph of **Arbitration** is deleted and replaced by the following:

If we and an **Insured** do not agree:

002/020004/31/331/33228314860/04

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle**; or

2. As to the amount of such compensatory damages;

   then the insured may demand to settle these disputed issues by arbitration. If an **insured** files a lawsuit against us or an owner or operator of an **uninsured motor vehicle** seeking damages that are the subject of the claim for Uninsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if such lawsuit is filed within the time limit required by the law of the state where the accident occurred for filing a lawsuit against the owner or operator of the **uninsured motor vehicle** for the damages arising out of the accident and only if the **insured** gives us a written demand for arbitration within (30) days after the filing of such lawsuit.

**D.** Item 5. of **Arbitration** is deleted and the remaining paragraphs are renumbered appropriately.

**5. Part C2 – COMBINED UNINSURED/UNDERINSURED MOTORISTS COVERAGE**

Part C2 is amended as follows:

A. Exclusion A.2. Is deleted and replaced by the following:

We do not provide coverage for **property damage** or **bodily injury** caused by an uninsured motor vehicle and sustained by any **insured**:

**2.** While **occupying your covered** auto when it is being used as a public or livery conveyance. This includes but is not limited to any period of time that **insured** is logged into a **transportation** network **platform** as a driver, whether or not a passenger is **occupying** the vehicle.

This exclusion does not apply to a share-the-expense car pool.

B. Exclusion C.2. is deleted and replaced by the following:

We do not provide coverage for **bodily injury** caused by an **underinsured motor vehicle** and sustained by any **insured**:

2. While **occupying your covered** auto when it is being used as a public or livery conveyance. This includes but is not limited to any period of time that **insured** is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle. This exclusion does not apply to a share-the-expense car pool.

C. The fourth and fifth paragraphs of **Limit of Liability** are deleted and replaced by the following:

The limits of bodily injury liability shown in the [Schedule or] Declarations for each person and each accident for this coverage shall be reduced by all sums:

1. Paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

2. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

The most we will pay for **bodily injury** damages to an **insured** under this coverage is the lesser of:

1. the limit of bodily injury liability shown in the [Schedule or] Declarations for each person for this coverage reduced by all sums described in items 1. and 2. of the preceding paragraph; or

2. the damages sustained by the **insured** for **bodily injury** reduced by:

   a. all sums described in items 1. and 2. in the preceding paragraph; and

   b. all sums paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law.

**D.** The first paragraph of **Arbitration** is deleted and replaced by the following:

If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**; or

2. As to the amount of such compensatory damages;

then the insured may demand to settle these disputed issues by arbitration.

For purposes of an:

1. Uninsured Motorists Coverage claim, if an **insured** files a lawsuit against us or an owner or operator of an **uninsured motor vehicle** seeking damages that are the subject of the claim for Uninsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **uninsured motor vehicle** for the damages

© Copyright, North Carolina Rate Bureau, 2018

002/02000443/7337/33229314800/04

Case 1:20-cv-00907-CCE-JEP    Document 3    Filed 10/02/20    Page 25 of 65

arising out of the accident and only if the **insured** gives us a written demand for arbitration within thirty (30) days after the filing of such lawsuit.

2. Underinsured Motorists Coverage claim, if an **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that are the subject of the claim for Underinsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if the **insured** gives us a written demand for arbitration within thirty (30) days after the later of:

   a. The date we advance payment to the **insured** in an amount equal to a tentative settlement between the **insured** and the owner or operator of the **underinsured motor vehicle;**

   b. The date any applicable liability bonds or policies have been exhausted by payments of judgments or settlements; or

   c. The date the **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that **are** the subject of the claim for Underinsured Motorists Coverage under this policy, provided that such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **underinsured motor vehicle** for the damages arising out of the accident.

E. Item 5. of Arbitration **is deleted and** the remaining paragraphs are renumbered appropriately.

6. **Part D - COVERAGE FOR DAMAGE TO YOUR AUTO**

Part D is amended as follows:

A. Exclusion 1. Is replaced by the following: We will not pay for:

   1. Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This includes **but** is not limited to any period of time while it is being used by any person who is logged into a **transportation** network platform as a driver, whether or not a passenger is **occupying** the vehicle.

      This exclusion does not apply to a share-the-expense car pool.

B. Exclusion 9 is changed by deleting the following:

This exclusion does not apply to the interests of Loss Payees in **your covered auto.**

C. The following Exclusion 14 is added:

We will not pay for:

14. Loss to your **covered auto** or any **non-owned auto** while participating in any prearranged, organized, or spontaneous:

   a. racing contest, speed contest, demolition, stunt activity, or competitive driving event, or in practice or preparation for any such contest or use of this type; or

   b. use of a vehicle at a facility designed for racing or high performance driving unless such use is for an activity other than high performance driving, high speed driving, and other than those activities listed in 14.a. above.

7. **Part E - DUTIES AFTER AN ACCIDENT OR LOSS - FILING A CLAIM**

Part E is amended as follows:

A. Paragraph 3. Of the **Additional Duties For Coverage For** Damage to **Your Auto** provision is replaced by the following:

   3. Permit us to inspect and appraise the damaged property, including **but** not limited to any damaged glass or windshield, before its repair, replacement or disposal.

8. **Part F – GENERAL PROVISIONS**

Part F is amended as follows:

A. The following is added to paragraph 4 of the **Cancellation** provision:

   g. The named **insured** is no longer an eligible risk under G.S. 58-37-1.

   h. Any other reason permitted by the North Carolina General Statutes.

B. **Other Termination Provisions** is deleted and replaced by the following:

   1. If the law in effect in North Carolina at the time this policy is issued, renewed or continued:

      a. requires a longer notice period;

      b. requires a special form of or procedure for giving notice;

      c. modifies any of the stated termination reasons; or;

      d. adds any additional termination reasons;

      we will comply with those requirements and this policy shall be deemed amended to include any such change in the law.

   2. Proof of mailing of any notice shall be sufficient proof of notice.

   3. If the named **insured** or a premium finance company cancels this policy, the premium owed or premium refund due will be calculated according to the short rate provisions contained in our manuals. If we

Fax from Teresa.Hendricke@sentry.com to Debra⌐

cancel this policy, any premium owed or premium refund will be calculated on a pro-rata basis. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

C. The following is added to the **Transfer Of Your Interest In This Policy** provision.

The benefits of this Policy that may be **available** to you following a covered loss may not be assigned unless:

1. All duties listed under the **Additional Duties For Coverage For Damage To**

**Your Auto** provision in Part E **- Duties After an Accident or Loss - Filing A Claim** are performed by a person seeking coverage;

2. An inspection of the damage has been conducted by an adjuster authorized by us, or we give our consent; and

3. Any Assignee receiving a benefit under this Policy assigned under this provision for damage to **your covered** auto is subject to **all** duties and conditions under the policy. This includes the Appraisal Clause under Part D **- Coverage For Damage To Your Auto** to resolve disagreements on the amount of loss.

002702004434733773322931489764

This policy is a legal contract between you and us. The Personal Auto Policy is:

- designed for easy reference;
- simplified to make it more understandable; and
- arranged to better display the available coverage.

**READ YOUR POLICY CAREFULLY**

# PERSONAL AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

"We", "us" and "our" refer to the Company providing this insurance.

For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are boldfaced or in quotation marks when used.

**"Bodily Injury"** means bodily harm, sickness or disease, including death that results.

**"Business"** means trade, profession or occupation.

**"Family member"** means a person related to you by blood, **marriage** or adoption who is a resident of your household. This includes a ward or foster child.

**"Occupying"** means in; upon; getting in, on, out or off.

**"Property damage"** means physical injury to, destruction of, or loss of use of tangible property.

**"Trailer"** means a vehicle designed to be pulled by a:

1. Private passenger auto or station wagon type; or

2. Pickup truck or van.

It also means a farm wagon or farm implement while pulled by a vehicle listed in 1. or 2. above.

**"Your covered auto"** means:

1. Any vehicle shown in the Declarations.

2. A **newly acquired auto.**

3. Any **trailer** you own.

4. Any auto or **trailer** not owned by you while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. loss; or

e. destruction.

This provision **(4.)** does not apply to Part **D** - Coverage for Damage to Your Auto.

**"Newly acquired auto"** means any of the following types of vehicles you become the owner of during the policy period.

1. a private passenger auto or station wagon type;

2. a pickup truck or van that:

   a. has a Gross **Vehicle** Weight as specified by the manufacturer of less than 10,000 pounds; and

   b. is not used for the delivery or transportation of goods and materials unless such use is:

      (1) incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

      (2) for farming or ranching.

Any coverage for a **newly acquired** auto is subject to the following:

1. If a **newly acquired** auto replaces a vehicle shown in the Declarations, it will have the same coverage as the vehicle it replaced except that coverage, if any, under Part **D** — Coverage For **Damage To** Your Auto applies only if you ask us to insurer it within 30 days after you become the owner.

2. If a **newly acquired** auto is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations if you ask us to insure it within 30 days after you become the owner.

3. Coverage under this policy terminates for any **newly acquired** auto on the effective date and time of a policy (other than this policy) issued by us or any other company that describes such vehicle on its declarations page.

4. If you ask us to insure a **newly acquired** auto within the applicable specified time period described in 1. or 2. above, any coverage we provide for the **newly acquired** auto begins on the date you become the owner. If you ask us to insure a **newly acquired** auto after the applicable specified time period described above has

002/02000430/337/33322531480074

elapsed, any coverage we provide for the **newly acquired auto** will begin at the time you request the coverage. You must pay us for any added amount due for any coverage we provide for a **newly acquired auto.**

---

## PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the **insured**. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay **all** defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

**"Insured"** as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**

2. Any person using **your covered auto.**

3. For **your covered auto,** any person or organization but only with respect to **legal** responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or **trailer,** other than **your covered auto,** any person or organization but only with respect to **legal** responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the auto or **trailer.**

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability:

1. We will pay the following on behalf of an **insured:**

   a. Premiums on appeal bonds and bonds to **release** attachments in any suit we defend. We have no duty to purchase bonds in an amount exceeding our Limit of Liability, and we have no duty to apply for or furnish these bonds; and

   b. All costs taxed against the **insured** and interest accruing after a judgment is entered in any suit we defend. Costs do not include prejudgment interest. Our duty to pay post-judgment interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for the coverage.

2. We will pay the following to an **insured:**

   a. Up to $250 for the cost of bail bonds required because of traffic law violations resulting from an accident. The accident must result in **bodily injury** or **property damage** covered under this policy;

   b. Up to $200 a day for loss of wages or salary, **but** not other income, because of attendance

at hearings or trials at our request;

   c. Up to $200 for expenses incurred by an **insured** for Emergency first aid to others performed at the scene of an accident that involves any auto covered by this policy; and Other reasonable expenses incurred at our request.

   d. Other reasonable expenses incurred at our request.

The amount of any costs, wages, salary, or other expenses listed above that are incurred by an **insured** must be reported to us by such **insured** before we will make payment.

### EXCLUSIONS

A. We do not provide Liability Coverage for any **insured:**

1. Who intentionally causes **bodily injury** or **property** damage. This exclusion applies only to the extent that the limit of liability of this policy exceeds the minimum limit required by the financial responsibility law of North Carolina.

2. For **property damage** to property owned or being transported by that insured.

3. For **property damage** to property:

   a. rented to;

   b. used by; or

   c. in the care of;

   that **insured**. This exclusion does not apply to a residence or private garage.

4. For **bodily injury** to an employee of that **insured** during the course of employment. This exclusion does not apply to a domestic employee unless workers' compensation benefits are required or **available** for that domestic employee.

5. For that **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the **business** of:

   a. selling;          d. storing; or

   b. repairing;       e. parking;

   c. servicing;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion does not apply to the ownership, maintenance or use of **your covered auto** by:

Case 1:20-cv-00907-CCE-JEP     Document 3     Filed 10/02/20     Page 29 of 65

a. you;

b. any **family member;** or

c. any partner, agent or employee of you or any **family member.**

This exclusion applies only to the extent that the limit of liability of this policy exceeds the minimum limit required by the financial responsibility law of North Carolina.

7. Maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in Exclusion 6. This exclusion does not apply to the maintenance or use of a:

a. private passenger auto;

b. pickup or van that:

(1) You own; or

(2) You do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

(a) breakdown;

(b) repair;

(c) servicing;

(d) loss, or

(e) destruction; or

c. **trailer** used with a vehicle described in **a.** or b. above.

8. Using a vehicle without a reasonable belief that that **insured** is entitled to do so.

This Exclusion A.8. does not apply to a **family member** using **your covered auto** which is owned by you.

9. For **bodily injury** or **property** damage for which **insured:**

a. is an insured under a nuclear energy liability policy; or

b. would be an insured under a nuclear energy liability policy **but** for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. Nuclear Energy Liability Insurance Association;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle, other than **your covered auto,** which is:

a. owned by you; or

b. furnished for your regular use.

2. Any vehicle, other than **your covered auto,**

which is:

a. owned by any **family member;** or

b. furnished for the regular use of any **family member.**

However, this exclusion (B.2.) does not apply to your maintenance or use of any vehicle which is:

a. owned by a **family member;** or

b. furnished for the regular use of a **family member.**

## LIMIT OF LIABILITY

The limit of liability shown in the Declarations for each person for Bodily Injury Liability Coverage is our maximum limit of liability for **all** damages for **bodily injury,** including damages for care, loss of services or death, sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability Coverage is our maximum limit of liability for **all** damages for any one auto **injury** resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Property **Damage** Liability Coverage is our maximum limit of liability for **all** damages to **all** property resulting from any one auto accident. This is the most we will pay as a result of any one auto accident regardless of the number of:

1. **insureds;**

2. Claims made;

3. **Vehicles** or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy will comply with the law to the extent required.

## OTHER INSURANCE

Copyright, North Carolina Rate Bureau, 2005

002/02000437/337/33022931460C/04

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of **all** applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B – MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

We will pay reasonable expenses incurred for necessary medical and funeral services because of **bodily injury:**

1. Caused by accident; and

2. Sustained by an **Insured.**

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

Reasonable medical expenses do not include expenses:

1. For treatment, services, products or procedures **that** are:

   a. Experimental in nature, for research, or not primarily designed to serve a medical purpose; or

   b. Not commonly and customarily recognized throughout the medical profession and within the United States as appropriate for the treatment of the **bodily injury;** or

2. Incurred for:

   a. The use of thermography or other related procedures of a similar nature; or

   b. The use of acupuncture or other related procedures of a similar nature; or

   c. The purchase or rental of equipment not primarily designed to serve a medical purpose.

Expenses are reasonable only if they are consistent with the usual fees charged by the majority of similar medical providers in the geographical **area** in which the expenses were incurred for the specific medical service.

Services are necessary only if the services are rendered by a licensed medical provider within the scope of the provider's practice and license and are essential in achieving maximum medical improvement for the **bodily injury** sustained in the accident.

We have the right to make or obtain a utilization review of the medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

"Insured" as used in this Part means:

1. You or any **family member:**

   a. while **occupying;** or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while **occupying:**

   a. **your covered auto;** or

   b. any other motor vehicle:

      (1) operated by you; or

      (2) operated by a **family member** if the motor vehicle is a private passenger auto or **trailer.**

### EXCLUSIONS

We do not provide Medical Payments Coverage for any **Insured** for **bodily injury:**

1. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

2. Sustained while **occupying** any vehicle located for use as a residence or premises.

3. Occurring while employed or otherwise engaged in the **business** of:

   a. selling;   d. storing; or

   b. repairing;   e. parking;

   c. servicing;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion applies only if workers' compensation benefits are **available** for the **bodily injury.**

4. Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is:

   a. owned by you; or

   b. furnished for your regular use.

5. Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is:

   a. owned by any family member; or

   b. furnished for the regular use of any family member.

   However, this exclusion does not apply to you.

6. Sustained while **occupying** a vehicle without a reasonable belief that that **Insured** is entitled to do so.

   This Exclusion 6. does not apply to a **family member** using **your covered** auto which is owned by you.

7. Sustained while **occupying** any auto not owned by, or furnished for the regular use of, you or any **family member,** while used to carry persons or property for a fee. This exclusion does not apply to:

Copyright, North Carolina Rate Bureau, 2005

002702000434733773322831480074

Case 1:20-cv-00907-CCE-JEP   Document 3   Filed 10/02/20   Page 31 of 65

a. a share-the-expense car pool, or

b. you or any **family member.**

8. Resulting from the maintenance or use of any auto not owned by, or furnished for the regular use of, you or any **family member,** while that **insured** is engaged in the **business** of:

a. **selling;**  d. storing, or

b. repairing;  e. parking;

c. servicing;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion does not apply to you or any **family member.**

9. Resulting from the maintenance or use of any auto not owned by, or furnished for the regular use of, you or any **family member,** while that **insured** is employed or otherwise engaged in any **business** not described in Exclusion 8. This exclusion does not apply:

a. to you or any **family member;** or

b. if the **bodily injury** results from the operation of a private passenger auto or **trailer** by you.

10. Caused by or as a consequence of:

a. war (declared or undeclared);

b. civil war;

c. insurrection; or

d. rebellion or revolution.

11. Sustained while **occupying** any motorized vehicle having fewer than four wheels.

## LIMIT OF LIABILITY

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident regardless of the number of:

1. Claims made;

2. **Vehicles** or premiums shown in the Declarations; or

3. Vehicles involved in the accident.

## NON-DUPLICATION

No person for whom medical expenses are payable under this coverage shall be paid more than once for the same medical expense under this or similar vehicle insurance, including any no-fault benefits required by law.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of **all** applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## ARBITRATION

The amount due under this coverage shall be decided by agreement between the **insured** and us. If there is no agreement, the amount due shall be decided by arbitration upon written request of the **insured** or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to **agree** on the third one within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on us, the **insured,** any assignee of the **insured** and any person or organization with whom the **insured** expressly or impliedly contracts for the rendition of medical services. The arbitrators' decision shall be limited to whether or not the medical expenses were reasonable and the services were necessary, with the amount due being equal only to the reasonable expenses for necessary services. The arbitrators shall not award punitive damages or other noncompensatory damages.

The cost of the arbitrator and any expert witness shall be paid by the party who hired them. The cost of the third arbitrator and other expenses of arbitration shall be shared equally by both parties.

The arbitration shall take place in the county in which the **insured** resides unless the parties **agree** to another place. State court rules governing procedure and admission of evidence shall be used.

## PART C1 – UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

1. **Bodily injury** sustained by an **insured** and caused by an accident; and

2. **Property damage** caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

Any judgment for damages arising out of a suit is not

binding on us unless we have been served with a copy of the summons, complaint or other process against the uninsured motorist.

**"Insured"** as used in this Part means:

1. You or any **family member.**

2. Any other person **occupying:**

a. **your covered auto;** or

b. any other auto operated by you.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person listed in 1. or 2. above.

002/02000431737/33228314800/04

**"Property damage"** as used in this Part means injury to or destruction of:

1. **Your covered auto.**

2. Any property owned by a person listed in 1. or 2. of **insured.**

**"Uninsured motor vehicle"** means a land motor vehicle or trailer of any type:

1. To which neither:

   a. a liability bond or policy; nor

   b. cash or securities on file with the North Carolina Commissioner of Motor Vehicles;

   applies at the time of the accident.

2. To which a liability bond or policy applies at the time of the accident; provided its limit for liability is less than the minimum limit specified by the financial responsibility law of North Carolina.

3. Which, with respect to damages for **bodily injury** only, is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. you or any **family member;**

   b. a vehicle which you or any **family member** are **occupying;** or

   c. **your covered auto.**

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, **"uninsured motor vehicle"** does not include any vehicle or equipment:

1. Owned by you.

2. Owned or operated by a self-insurer under any applicable motor vehicle law; except a self-insurer which is or becomes insolvent.

3. Owned by:

   a. The United States of America;

   b. Canada;

   c. a state; or

   d. an agency, other than a political subdivision of a., b. or c. above.

4. Operated on rails or crawler treads.

5. Which is a farm type tractor or equipment designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for **property** damage or **bodily injury** sustained by any **insured:**

1. If that **insured** or the **legal** representative settles the **bodily injury** or **property damage** claim without our written consent.

2. While **occupying your covered** auto while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that **insured** is entitled to do so.

   This Exclusion A.3. does not apply to a **family member** using **your covered** auto which is owned by you.

4. For the first $100 of the amount of **property damage** to the property of each insured as the result of any one accident.

5. If the property is contained in or struck by a motor vehicle (other than **your covered** auto) owned by you or any **family member.**

6. For any punitive or exemplary damages, or legal costs related thereto.

7. While occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

   However, this exclusion does not apply to you or any **family member.**

B. We do not provide Uninsured Motorists Coverage for **property damage** caused by a hit-and-run vehicle whose operator or owner cannot be identified.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or any similar law:

   a. workers' compensation law; or

   b. disability benefits law.

## LIMIT OF LIABILITY

The limit of bodily injury liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for **all** damages for **bodily injury**, including damages for care, loss of services or death, sustained by any one person in any one auto accident.

Subject to this limit for each person, the limit of bodily injury liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for **all** damages for **bodily injury** resulting from any one accident. The limit of property damage liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for **all** damages to **all** property resulting from any one accident. This is the most we will pay for **bodily injury** and **property** damage regardless of the number of:

1. **Insureds;**

2. Claims made;

3. **Vehicles** or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

Case 1:20-cv-00907-CCE-JEP    Document 3    Filed 10/02/20    Page 33 of 65

The limit of liability otherwise applicable under this coverage shall be reduced by all sums:

1. Paid because of the **bodily injury** or **property damage** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A;

2. Paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law; and

3. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

No payment will be made for loss paid or payable to the **insured** under Part D or any policy of property insurance.

Any payment to any person under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

This coverage is excess over and shall not duplicate any amount paid or payable under Part B.

## OTHER INSURANCE

If this policy and any other auto insurance policy apply to the same accident, the maximum amount payable under all applicable policies for injuries to an **insured** caused by an **uninsured motor vehicle** shall be the sum of the highest limit of liability for this coverage under each such policy.

In addition, if there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. Further, the execution of a covenant not to enforce judgment by the injured party shall not preclude us from pursuing our right to sue for or otherwise recover any payment made under this coverage from anyone else who may be liable. The person to or for whom payment was made shall do:

1. Whatever is necessary to enable us to

exercise our rights; and

2. Nothing after loss to prejudice them.

B. If we make a payment under this coverage and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## ARBITRATION
If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or driver of an **uninsured motor vehicle;** or

2. As to the amount of such damages;

the **insured** may demand to settle the dispute by arbitration.

The following procedures will be used:

1. Each party will select a competent arbitrator. The two so selected will select a third.

2. If the third arbitrator is not selected within 30 days, the **insured** or we may request a judge of a court of record to name one. The court must be in the county and state in which arbitration is pending.

3. Each party will pay its chosen arbitrator. Each will pay half of all other expenses of arbitration. **Fees** to lawyers and expert witnesses are not considered arbitration expenses and are to be paid by the party hiring these persons.

4. Unless the **insured** and we **agree** otherwise, arbitration will take place in the county and state in which the **insured** lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will resolve the issues. A written decision on which two arbitrators **agree** will be binding on the **insured** and us.

5. Any arbitration action against the company must begin within the time limit allowed for **bodily injury** or death actions in the state where the accident occurred.

6. Judgment upon award may be entered in any proper court.

7. As an alternative, the **insured** and we may **agree** to arbitrate by rules other than stated above.

---

### PART C2 – COMBINED UNINSURED/UNDERINSURED MOTORISTS COVERAGE

## INSURING AGREEMENT
We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

1. **Bodily injury** sustained by an **insured** and caused by an accident; and

2. **Property damage** caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

We will also pay compensatory damages which an **insured** is legally entitled to recover from the owner

or operator of an **underinsured motor vehicle** because of **bodily injury** sustained by an **insured** and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**. We will pay for these damages only after the limits of liability under any applicable liability bonds or policies have been exhausted by payments of judgments or settlements, unless we:

1. Have been given written notice in advance of settlement between an **insured** and the owner or operator of the **underinsured motor vehicle;** and

2. Consent to advance payment to the **insured** in the amount equal to the tentative settlement.

Any judgment for damages arising out of a suit is not binding on us unless we have been served with a copy of the summons, complaint or other process against the uninsured or underinsured motorist.

**Insured** as used in this Part means:

1. You or any **family member.**

2. Any other person **occupying:**

   a. **your covered auto;** or

   b. any other auto operated by you.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person listed in 1. or 2. above.

**Property** damage as used in this Part means injury to or destruction of:

1. **Your covered auto.**

2. Any property owned by a person listed in 1. or 2. of **Insured.**

**Underinsured motor vehicle** means a land motor vehicle or trailer of any type:

1. The ownership, maintenance or use of which is insured or bonded for liability at the time of the accident; and

2. The sum of the limits of liability under **all bodily injury** liability bonds and insurance policies applicable at the time of the accident is equal to or greater than the minimum limit specified by the financial responsibility law of North Carolina and:

   a. less than the limit of liability for this coverage; or

   b. the total limit of liability **available** has been reduced to less than the limit of liability for this coverage by payment of damages to other person.

However, **underinsured motor vehicle** does not include any vehicle or equipment:

1. Operated on rails or crawler treads.

2. Which is a farm-type tractor or other vehicle designed for use principally off public roads and while not upon public roads.

3. While located for use as a residence or premises.

4. Which is an **uninsured motor vehicle.**

5. Which is insured under Liability Coverage of this policy if such policy's limit of liability for Combined Uninsured / Motorists Coverage is equal to or less than its limit of liability for Liability Coverage.

**Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

1. To which neither:

   a. a liability bond or policy; nor

   b. cash or securities on file with the North Carolina Commissioner of Motor Vehicles;

   applies at the time of the accident.

2. To which a liability bond or policy applies at the time of the accident; provided its limit for liability is less than the minimum limit specified by the financial responsibility law of North Carolina.

3. Which, with respect to damages for **bodily injury** only, is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. you or any **family member;**

   b. a vehicle which you or any **family member** are **occupying;** or

   c. **your covered auto.**

4. To which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, **uninsured motor vehicle** does not include any vehicle or equipment:

1. Owned by you.

2. Owned or operated by a self-insurer under any applicable motor vehicle law; except a self-insurer which is or becomes insolvent.

3. Owned by:

   a. The United States of America;

   b. Canada;

   c. a state; or

   d. an agency, other than a political subdivision of a., b. or c. above.

4. Operated on rails or crawler treads.

5. Which is a farm type tractor or equipment designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide coverage for **property damage** or **bodily injury** caused by an uninsured motor vehicle and sustained by any insured:

1. If that **Insured** or the **legal** representative settles the **bodily injury** or **property damage** claim without our written consent.

---

002/02000437/737/73022931480074

2. While **occupying your covered auto** while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that **insured** is entitled to do so.

   This Exclusion A.3. does not apply to a **family member** using **your covered auto** which is owned by you.

4. For the first $100 of the amount of **property damage** to the property of each **insured** as the result of any one accident.

5. If the property is contained in or struck by a motor vehicle (other than **your covered auto**) owned by you or any **family member.**

6. For any punitive or exemplary damages, or legal costs related thereto.

7. While **occupying,** or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

   However, this exclusion does not apply to you or any **family member.**

B. We do not provide coverage for **property damage** caused by a hit-and-run vehicle whose operator or owner cannot be identified.

C. We do not provide coverage for **bodily injury** caused by an **underinsured motor vehicle** and sustained by any **insured:**

1. If that **insured** or the **legal** representative settles the **bodily injury** claim without our consent. However, this exclusion does not apply if we:

   a. have been given written notice in advance of a settlement between an **insured** and the owner or operator of the **underinsured motor vehicle;** and

   b. we fail to advance payment to the **insured** in an amount equal to the tentative settlement within thirty days following receipt of such written notice.

2. While **occupying your covered auto** while it is being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

3. Using a vehicle without reasonable belief that that **insured** is entitled to do so.

   This Exclusion C.3. does not apply to a **family member** using **your covered auto** which is owned by you.

4. For any punitive or exemplary damages, or legal costs related thereto.

5. While **occupying,** or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

   However, This exclusion does not apply to you or any **family member,**

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or any similar law:

1. workers' compensation law; or

2. disability benefits law.

## LIMIT OF LIABILITY

The limit of bodily injury liability shown in the Declarations for each person for Combined Uninsured / Underinsured Motorists Coverage is our maximum limit of liability for **all** damages for **bodily injury,** including damages for care, loss of services or death, sustained by any one person in any one auto accident.

Subject to this limit for each person, the limit of bodily injury liability shown in the Declarations for each accident for Combined Uninsured / Underinsured Motorists Coverage is our maximum limit of liability for **all** damages for **bodily injury** resulting from any one accident. The limit of property damage liability shown in the Declarations for each accident for Combined Uninsured / Underinsured Motorists Coverage is our maximum limit of liability for **all** damages for **property damage** caused by an **uninsured motor vehicle** and resulting from any one accident.

This is the most we will pay for **bodily injury** and **property damage** regardless of the number of:

1. **Insureds;**

2. Claims made;

3. **Vehicles** or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

The limits of bodily injury liability shown in the Declarations for each person and each accident for this coverage shall be reduced by all sums:

1. Paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible. This includes **all** sums paid under Part A;

2. Paid or payable because of the **bodily injury** under any workers' compensation law. However, this reduction does not apply to the extent that an employer's lien is required to be paid under North Carolina's workers' compensation law; and

3. Paid or payable because of the **bodily injury** under any disability benefits law or any similar law.

The most we will pay for **bodily injury** damages to an **insured** under this coverage is the lesser of:

   a. the limit of bodily injury liability shown in the Declarations for each person for this coverage reduced by **all** sums described in items 1., 2. and 3. of the preceding paragraph; or

002/02000437/737/7332293148007/4

Case 1:20-cv-00907-CCE-JEP    Document 3    Filed 10/02/20    Page 36 of 65

b. the damages sustained by the **insured** for **bodily injury** reduced by all sums described in items 1., 2. and 3. in the preceding paragraph.

The limit of property damage liability under this coverage shall be reduced by all sums paid because of the **property damage** by or on behalf of persons or organizations who may be legally responsible. This includes all sums payable under Part A.

No payment will be made for loss paid or payable to the insured under Part D or any policy of property insurance.

Any payment to any person under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

This coverage is excess over and shall not duplicate any amount paid or payable under Part B.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. Further, the execution of a covenant not to enforce judgment by the injured party shall not preclude us from pursuing our right to sue for or otherwise recover any payment made under this coverage from anyone else who may be liable. The person to or for whom payment was made shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights under this paragraph do not apply against the owner or operator of an **underinsured motor vehicle** if we have been given written notice in advance of a settlement and fail to advance payment in an amount equal to the tentative settlement within 30 days following receipt of such notice.

B. If we make a payment under this coverage and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## OTHER INSURANCE

If this policy and any other auto insurance policy apply to the same accident, the maximum amount payable under all applicable policies for all injuries to an **insured** caused by an **uninsured motor vehicle**

or **underinsured motor vehicle** shall be the sum of the highest limit of liability for this coverage under each policy.

In addition, if there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover compensatory damages from the owner or driver of an **uninsured motor vehicle** or **underinsured motor vehicle;** or

2. As to the amount of such damages;

the **insured** may demand to settle the dispute by arbitration.

The following procedure will be used:

1. Each party will select a competent arbitrator. The two so selected will select a third.

2. If the third arbitrator is not selected within 30 days, the **insured** or we may request a judge of a court of record to name one. The court must be in the county and state in which arbitration is pending.

3. Each party will pay its chosen arbitrator. Each will pay half of all other expenses of arbitration. **Fees** to lawyers and expert witnesses are not considered arbitration expenses and are to be paid by the party hiring these persons.

4. Unless the **insured** and we **agree** otherwise, arbitration will take place in the county and state in which the **insured** lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will resolve the issues. A written decision on which two arbitrators agree will be binding on the **insured** and us.

5. Any arbitration action against the company must begin within the time limit allowed for **bodily injury** or death actions in the state where the accident occurred.

6. Judgment upon award may be entered in any proper court.

7. As an alternative, the **insured** and we may **agree** to arbitrate by rules other than stated above.

## PART D – COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto,** including their equipment. Direct and accidental loss does not include any reduction in the value of any vehicle after it has been repaired, as compared to its value before

it was damaged.

We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

Case 1:20-cv-00907-CCE-JEP    Document 3    Filed 10/02/20    Page 37 of 65

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto,** we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

Our payment will be reduced by any deductible shown in the Declarations. The deductible will not apply to a loss caused by:

   a. fire or lightning;

   b. smoke due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the auto is stored;

   c. the stranding, sinking, burning, **collision,** or derailment of any conveyance in or on which the auto is being transported;

**"Collision"** means the upset of **your covered auto** or a **non-owned auto** or their impact with another vehicle or object.

Loss caused by the following is considered Other than **collision:**

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass.

If loss is caused by contact with a bird or animal, or if breakage of glass is caused by **collision,** you may elect to have either loss considered to be caused by **collision.**

**"Non-owned auto"** means:

1. Any private passenger auto, station wagon type, pickup truck, van or **trailer** not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member.**

2. Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

   a. breakdown;    d. loss; or

   b. repair;        e. destruction.

   c. servicing;

We will also pay for direct and accidental loss caused by fire or lightning to clothes or other personal effects:

1. which are owned by you or any **family member;** and

2. which are in or on **your covered auto.**

**"Permanently installed"** means installed by bolts, brackets, or welding in a location in accordance with applicable laws and regulations for the installation of such equipment or services.

**TRANSPORTATION EXPENSES**

In addition, we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Transportation expenses incurred by you in the event of a total theft of **your covered auto.** This applies only if the Declarations indicate that Other Than Collision is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of the total theft of a **non-owned auto.** This applies only if the Declarations indicate that Other Than Collision is provided for any **your covered auto.**

We will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

**SALVAGE CHARGES**

In addition, we will pay general average and salvage charges that you or any **family member** are legally responsible for in transporting an auto.

**EXCLUSIONS**

We will not pay for:

1. Loss to **your covered auto** or any **non-owned auto** which occurs while they are being used as a public or livery conveyance. This exclusion does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

This exclusion does not apply if the damage results from the total theft of your covered auto or any nonowned auto.

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. war (declared or undeclared);

   c. civil war;

   d. insurrection; or

   e. rebellion or revolution.

4. Loss to:

   a. any electronic equipment or device that records, emits, amplifies, receives or transmits audio, visual, or data signals, including, but not limited to:

      (1) radios and stereos;

002/0200043/737/73322931480014

(2) tape decks;

(3) compact disc players or recorders;

(4) citizens band radios;

(5) telephones;

(6) two-way mobile radios;

(7) scanning monitor receivers;

(8) television monitor receivers;

(9) video cassette players or recorders;

(10) audio cassette players or recorders; or

(11) personal computers; or

(12) digital video disc player or recorder.

b. tapes, records, discs, or other media used with any equipment or device described in a.

c. any accessories used with equipment described in a.

Exclusions 4.a. and 4.c. do not apply to:

a. any equipment or device that is **permanently installed** by the vehicle's manufacturer; or

b. the first $1,000 of any equipment or device that is **permanently installed** by other than the vehicle's manufacturer;

in any **your covered auto** or a **non-owned auto.**

5. Loss to a camper body or **trailer** you own which is not shown in the Declarations. This exclusion (5.) does not apply to a camper body or **trailer** you:

a. acquire during the policy period; and

b. ask us to insure within the policy period or within 30 days after you become the owner.

6. Loss to any **non-owned auto** while used by you or any **family member** in the **business** of:

**a. selling;**  d. storing; or

b. repairing;  e. parking;

c. servicing;

vehicles designed for use mainly on public highways. This includes road testing and delivery.

7. Loss to any **non-owned auto** if used without the express or implied permission of the owner or other person in lawful possession of such vehicle.

8. With respect to any **trailer** shown in the Declarations, loss to:

a. awnings or cabanas; or

b. equipment designed to create additional living facilities.

9. Loss to **your covered** auto or any **non-owned auto** due to forfeiture ordered by the courts or destruction or confiscation by governmental or civil authorities because you or any **family member:**

a. engaged in illegal activities; or

b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion does not apply to the interests of Loss Payees in **your covered auto.**

10. Loss to equipment designed or used to detect or deter radar, laser or other speed monitoring equipment whether or not **permanently installed.**

11. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in Exclusion 6. This exclusion does not apply to the maintenance or use by you or any **family member** of a **non-owned auto** which is a private passenger auto or **trailer.**

12. Loss to any custom furnishings or equipment in or upon any **your covered** auto or a **non-owned auto,** including, but not limited to:

a. special carpeting and insulation, furniture or bars;

b. facilities for cooking and sleeping;

c. height extending roofs or ladders;

d. custom windows, murals, paintings or other decals or graphics;

e. tool boxes and fifth wheel conversions;

**f.** side exhausts and headers;

g. winches and roll bars;

h. special wheels/tires; or

i. body or suspension alterations.

However, this exclusion (12.):

a. does not apply to the first $1,000 of any such custom furnishings or equipment; and

b. does not apply to a camper body shown in the Declarations, or a cap, cover or bedliner in or upon any pickup truck you own.

13. Loss to, or loss of use of, a **non-owned auto** rented by:

a. you; or

b. any **family member;**

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member,** pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

Our limit of liability will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property with other property of like kind and quality.

This amount does not include any reduction in the value of the property after it has been repaired, as compared to its value before it was damaged.

Subject to the above, our limit of liability for loss to:

002/02000483733733228314800/04

1. Personal effects is $100; and

2. A **trailer** not owned by you is $1,500.

An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for the loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

  a. You; or

  b. The address shown in this policy. If we return stolen property we will pay for any damage resulting from the theft. We may keep **all** or part of the property at an agreed or appraised value.

    [IN THE REPAIR OF YOUR COVERED AUTO UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, WE MAY REQUIRE OR SPECIFY THE USE OF AUTOMOBILE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.]

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER INSURANCE

If other insurance also covers the loss we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of **all** applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible insurance.

## APPRAISAL

If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value

and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

We do not waive any of our rights under this policy by agreeing to an appraisal.

## LOSS PAYEE

If a Loss Payee is shown in the Declarations, then any Collision Coverage or Other Than Collision coverage provided by this policy applies to the Loss Payee's interest in **your covered auto**. If Collision coverage or Other Than Collision coverage is cancelled or nonrenewed, we will provide coverage for the Loss Payee's interest until 10 days after the date we mail or electronically transmit a notice of the cancellation or nonrenewal to the Loss Payable. Any coverage for the Loss Payee's interest shall terminate on the earlier of the expiration of this 10 day period or the effective date of a policy or insurance binder for similar coverage for the Loss Payee's interest issued by another insurance carrier. Except for any continuation of coverage for the Loss Payee's interest that may be provided under this paragraph in connection with the Loss Payee's right to notice of cancellation or nonrenewal, this coverage for the Loss Payee's interest is only provided for a loss that would otherwise be payable to you.

Notwithstanding any other provisions of this policy, including but not limited to any continuation of coverage for the Loss Payee's interest as set forth above, if Collision Coverage or Other than Collision coverage is rescinded, the Loss Payee's interest will not be protected and the Loss Payee shall have no rights greater than your rights to recover for a loss.

If we pay you or the Loss Payee, then we are entitled to your and the Loss Payee's rights of recovery to the extent of our payment. Our right of recovery does not impair the Loss Payee's right to recover the full amount of its claim from you.

## PART E – DUTIES AFTER AN ACCIDENT OR LOSS – FILING A CLAIM

### GENERAL DUTIES

We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

A person seeking coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or **legal** papers received in connection with the accident or loss.

3. Submit as often as we reasonably require:

  a. to physical exams by physicians we select. We will pay for these exams.

  b. to examinations under oath and subscribe the same.

4. Authorize us to obtain:

  a. medical reports; and

  b. other pertinent records.

5. Submit a proof of loss when required by us.

002/0200044737/33229314860704
Case 1:20-cv-00907-CCE-JEP    Document 3    Filed 10/02/20    Page 40 of 65

Fax from Teresa.Hendricke@entry.com to Debra⌡

## ADDITIONAL DUTIES FOR UNINSURED AND COMBINED UNINSURED/UNDERINSURED MOTORISTS COVERAGE

A person seeking Uninsured or Combined Uninsured/Underinsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the **legal** papers if a suit is brought. A suit may not be brought by an insured until 60 days after that person notifies us of their belief that the prospective defendant is an uninsured motorist.

Any person who intends to pursue recovery against the owner or operator of an **underinsured motor vehicle** for damages beyond those paid or payable under this policy shall give us:

1. Notice of such intent; and

2. The opportunity to participate, at our expense, in the prosecution of such claim.

## ADDITIONAL DUTIES FOR COVERAGE FOR DAMAGE TO YOUR AUTO

A person seeking Coverage For **Damage To** Your Auto must also:

1. **Take** reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered** auto or any **non-owned auto** is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

## PART F – GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the **Insured** shall not relieve us of any obligations under this policy.

### CHANGES

The premium for each of **your covered autos** is based on information we have received from you or other sources. You agree:

1. That if any of this information material to the development of the policy premium is incorrect, incomplete or changed, we may adjust the premium accordingly during the policy period.

2. **To** cooperate with us in determining if this information is correct and complete, and to advise us of any changes in this information.

Any adjustment of your premium will be made using the rules in effect at the time of the change.

Premium adjustment may be made as the result of a change in:

1. Autos insured by the policy, including changes in use.

2. Drivers.

3. Coverages or coverage limits.

4. Rating territory.

5. Eligibility for discounts or other premium credits.

We may revise your policy coverages to provide more protection without additional premium charge. If we do this and you have the coverage which is changed, your policy will automatically provide the additional coverage as of the date the revision is effective in North Carolina. Otherwise, this policy contains **all** of the coverage agreements between you and us. Its terms may not be changed or waived except by an endorsement issued by us.

### FRAUD OR MATERIAL MISREPRESENTATION

We do not provide coverage for any **Insured**

1. who has made a fraudulent statement or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy; or

2. if a named insured made a material misrepresentation in the application for this policy of insurance.

This provision applies to Part A – Liability Coverage to the extent that the limits of liability exceed the minimum limits required by the Financial Responsibility Law of North Carolina. If we make payment under Part A – Liability Coverage which we would not have otherwise made in the absence of the preceding sentence, then we shall have the right to recover such payment from any **Insured** who made a fraudulent statement, engaged in fraudulent conduct, or made a material misrepresentation.

### LEGAL ACTION AGAINST US

No **legal** action may be brought against us until there has been full compliance with **all** the terms of this policy. In addition, under Part A, no **legal** action may be brought against us until:

1. We **agree** in writing that the **Insured** has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

No person or organization has any right under this policy to bring us into any action to determine the liability of an **Insured**.

### OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

002/02000434733773322831480070A

Case 1:20-cv-00907-CCE-JEP     Document 3     Filed 10/02/20     Page 41 of 65

However, our rights under this paragraph do not apply to:

1. Part B;
2. Part C1 and C2, as those parts contain separate provisions which state our right to recover payment under those Parts;
3. Part D, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment.

However, our rights under this paragraph do not apply to Part B.

## POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and
2. Within the policy territory.

The policy territory is:

1. The United States of America, its territories or possessions;
2. Puerto Rico; or
3. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between its ports.

## TERMINATION – CANCELLATION, NONRENEWAL, AUTOMATIC TERMINATION, OTHER TERMINATION PROVISIONS

**Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:
   a. returning this policy to us; or
   b. giving us advance written notice of the date cancellation is to take effect.
2. We may cancel the Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverages by mailing by first class mail to the named insured shown in the Declarations at the last known address:
   a. at least 15 days notice if cancellation is for nonpayment of premium; or
   b. at least 60 days notice in all other cases.
3. We may cancel any coverage other than Liability, Medical Payments and Uninsured Motorists or Combined Uninsured / Underinsured Motorists

Coverages by mailing to the named insured shown in the Declarations at the last known address 10 days notice.

4. We will cancel the Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverages only for the following reasons:
   a. Nonpayment of premiums.
   b. You become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance Facility on submission of new application.
   c. The termination of our contract with the agent through whom this policy was written. This does not apply if we terminate the contract because of the quality of the agent's insureds.
   d. The cancellation of this policy pursuant to a power of attorney given to a company licensed pursuant to the provisions of G.S. 58-35-5.
   e. You fail, at time of renewal, to meet the requirements of our corporate charter, articles of incorporation or by-laws, if we are organized for the sole purpose of providing members with insurance policies in North Carolina.
   f. If you knowingly make a material misrepresentation of:
      a. the years of driving experience; or
      b. the driving record of
      
      you or any other driver who lives with you and customarily uses your covered auto.

**Nonrenewal.** If we decide not to renew or continue the Liability, Medical Payments and Uninsured Motorists or Combined Uninsured/Underinsured Motorists Coverages of this policy we will mail notice to the named insured shown in the Declarations at the last known address. Notice will be mailed at least 60 days before the end of the policy period. If we decide not to renew or continue any other coverage, we will mail the notice at least 10 days before the end of the policy period. We will refuse to renew or continue this policy only as permitted by the laws of North Carolina.

**Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. **Failure** to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on **your covered auto,** any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

### Other Termination Provisions

1. If the law in effect in North Carolina at the time this

002/02000431/337/33229314800/64

Case 1:20-cv-00907-CCE-JEP    Document 3    Filed 10/02/20    Page 42 of 65

policy is issued, renewed or continued;

a. requires a longer notice period;

b. requires a special form of or procedure for giving notice; or

c. modifies any of the stated termination reasons;

we will comply with those requirements.

2. Proof of mailing of any notice shall be sufficient proof of notice.

3. If the Named Insured or a premium finance company cancels this policy, the premium owed or premium refund due will be calculated according to the short rate provisions contained in our manuals. If we cancel this policy, any premium owed or premium refund will be calculated on a pro-rata basis. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the

Declarations;

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto;** and

3. Any person having proper temporary custody of **your covered auto,** as an **Insured,** until the appointment of a legal representative.

Coverage will only be provided until the end of the policy period.

## AUTO REPAIRS

We shall not recommend the use of a particular motor vehicle repair service without clearly informing the claimant that:

(i) the claimant is under no obligation to use the recommended repair service;

(ii) the claimant may use the repair service of the claimant's choice; and

(iii) the amount determined by us to be payable under the policy will be paid regardless of whether or not the claimant uses the recommended repair service.

## CHOICE OF LAW

This policy is issued in accordance with the laws of North Carolina and covers property or risks principally located in North Carolina. Any and all claims or disputes in any way related to this policy shall be governed by the laws of North Carolina.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by an authorized Agent of this Company.

Secretary

President

Case 1:20-cv-00907-CCE-JEP    Document 3    Filed 10/02/20    Page 43 of 65

Fax from Teresa.Hendricke@sentry.com to Debra_|

# FEDERAL EMPLOYEES USING AUTOS IN GOVERNMENT BUSINESS

The following are not **Insureds** under Part A of the policy:

1. The United States of America or any of its agencies.

2. Any person with respect to **bodily injury** or **property damage** resulting from the operation of an auto by that person as an employee of the United States Government if the provisions of Section 2679 of Title 28. United States Codes (**Federal** Tort Claims Act), as amended, require the Attorney **General** of the United States to defend that person in any civil action or proceeding – which may be brought for the **bodily injury** or **property damage.**

NC 03 01 07 87          Copyright, North Carolina Rate Bureau, 1980, 1987          Page 1 of 1

# TOWING AND LABOR COSTS COVERAGE

We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled or keys are lost, broken or accidentally locked in the auto, up to the amount shown in the Declarations as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. We will only pay for labor performed at the place of disablement.

NC 03 03 09 95          Copyright, North Carolina Rate Bureau 1980, 1987, 1989, 1995          Page 1 of 1

# EXTENDED TRANSPORTATION EXPENSES COVERAGE

The provisions and exclusions that apply to Part D – Coverage for **Damage** to Your Auto also apply to this endorsement except as changed by this endorsement.

A. **EXTENDED TRANSPORTATION EXPENSES COVERAGE**

When there is a loss to a **your covered auto** described in the Declarations for which a specific premium charge indicates that Extended Transportation Expenses Coverage is afforded, or to a **non-owned auto**, we will pay, without application of a deductible, up to $15 per day to a maximum of $450 for:

1. Transportation expenses incurred by you.

2. Loss of use expenses for which you become legally responsible in the event of loss to a **non-owned auto.**

This coverage applies only if:

1. **Your covered** auto or the non-owned auto is withdrawn from use for more than 24 hours; and

2. The loss is caused by **collision** or is otherwise covered under Part D of this policy.

However, this coverage does not apply when there is a total theft of **your covered auto** or a **non-owned auto**. Such coverage is provided under Part D of this policy.

Our payment will be limited to that period of time reasonably required to repair or replace the **your covered auto** or the **non-owned auto.**

B. **INCREASED LIMITS TRANSPORTATION EXPENSES COVERAGE**

When there is a loss to **your covered auto** described in the Declarations for which a specific premium charge indicates that Increased Limits Transportation Expenses Coverage is afforded, or to a **non-owned auto:**

1. Coverage for Extended Transportation Expenses Coverage provided under this endorsement is increased to $30 per day up to a maximum of $900. All other provisions of Extended Transportation Expenses Coverage apply.

2. Coverage for Transportation Expenses Coverage provided under Part D of this policy is increased to $30 per day to a maximum of $900.

C. **ADDITIONAL INCREASED LIMITS TRANSPORTATION EXPENSES COVERAGE**

When there is a loss to **your covered auto** described in the Declarations for which a specific premium charge indicates that Additional Increased Limits Transportation Expenses Coverage is afforded, or to a **non-owned auto:**

1. Coverage for Extended Transportation Expenses Coverage provided under this endorsement is increased to $50 per day up to a maximum of $1,500. All other provisions of Extended Transportation Expenses Coverage apply.

2. Coverage for Transportation Expenses Coverage provided under Part D of this policy increased to $50 per day up to a maximum of $1,500.

 Copyright, North Carolina Rate Bureau, 1990, 1999

# LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid as interest may appear to you and the loss payee shown in the Declarations. This insurance covering the interest of the loss payee shall be come invalid only because of your:

1. conversion or secretion of **your covered auto**, or

2. damage to or destruction of **your covered auto** with the intent to commit fraud.

However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the loss payee 10 days notice of cancellation.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

 Copyright, North Carolina Rate Bureau, 1980, 1987, 1998

Fax from Teresa.Hendricke@sentry.com to Debra⌋

# JOINT OWNERSHIP ENDORSEMENT

## I. LIABILITY COVERAGE

Part A is amended as follows:

The definition of **insured** is replaced by the following:

**Insured** as used in this Part means:

1. You or any **family member** while all named insureds reside in the same household, for the ownership, maintenance or use of any auto or **trailer.**

2. Any person using **your covered auto.**

3. For **your covered** auto, any person or organization, but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or **trailer**, other than **your covered** auto, any person or organization, but only with respect to legal responsibility for acts or omissions of an **insured** described in 1. above for whom coverage is afforded under this Part. This provision applies only if the person or organization does not own or hire the auto or **trailer.**

## II. COVERAGE FOR DAMAGE TO YOUR AUTO

The first paragraph of the Insuring Agreement of Part D is replaced by the following:

We will pay for direct and accidental loss to:

1. **your covered auto**; or

2. any **non-owned auto** while all named insureds reside in the same household

including their equipment. Direct and accidental loss does not include any reduction in the value of any vehicle after it has been repaired, as compared to its value before it was damaged.

 Copyright, North Carolina Rate Bureau 2008

002/02004434/3377832293314860/14



# EXHIBIT B



# MARKET VALUATION REPORT

*Prepared for PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION*



## REPORT SUMMARY



## CLAIM INFORMATION

| | |
|---|---|
| Owner | Smith, Leslie |
| | 7054 Darnell St |
| | Fayetteville, NC 28314-8607 |
| Loss Vehicle | 2008 Lexus RX 350 AWD |
| Loss Incident Date | 12/19/2018 |
| Claim Reported | 12/27/2018 |



## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 91283078 |
| Claim Reference | 97A381210A |
| Adjuster | Gray, Pamela |
| Appraiser | Lensch, Caleb |
| Odometer | UNKNOWN |
| Last Updated | 12/28/2018 11:29 AM |



## VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 9,773.00** |
| Condition Adjustment | - $ 60.00 |
| **Adjusted Vehicle Value** | **$ 9,713.00** |
| Vehicular Tax (3%) | + $ 291.39 |
| Tax reflects applicable state, county and municipal taxes. | |

| **Total** | **$ 10,004.39** |
|---|---|

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

---

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION.

Valuation was calculated assuming average mileage of 143,800 since no odometer value was provided.

**BASE VEHICLE VALUE**

This is derived per our Valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology.................................2
Vehicle Information...................................3
Vehicle Condition....................................6
Comparable Vehicles..............................7
Valuation Notes......................................10
Supplemental Information.....................11

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# VALUATION METHODOLOGY

**How was the valuation determined?**



### CLAIM INSPECTION

PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



### CALCULATE BASE VEHICLE VALUE



Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE.** MARKET VALUATION REPORT

# 🚌 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | FAYETTEVILLE, NC 28314-8607 |
| VIN | 2T2HK31U88C080399 |
| Year | 2008 |
| Make | Lexus |
| Model | RX 350 |
| Body Style | AWD |
| Body Type | Sports Utility |
| Engine - | |
|     Cylinders | 6 |
|     Displacement | 3.5L |
|     Fuel Type | Gasoline |
|     Carburation | SFI |
| Transmission | Automatic Transmission 4 Wheel Drive Overdrive |
| Curb Weight | 4090 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| **Odometer** | UNKNOWN | |
|---|---|---|
| **Options** | | |
| Leather Seats | Reported | + 264 |
| Heated Seats | Reported | + 132 |
| Electric Glass Roof | Reported | + 396 |
| Luggage/Roof Rack | Reported | + 33 |

Reported* Option(s) added after initial valuation

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

## VEHICLE HISTORY SUMMARY

| | | |
|---|---|---|
| CCC VINguard® | | |
| | 6 Vehicle Market History Information | 08/12/2016 |
| Experian AutoCheck | No Title Problem Found | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

 # VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| **Odometer** | UNKNOWN | |
| **Transmission** | Automatic Transmission | ✔ |
| | Overdrive | ✔ |
| | 4 Wheel Drive | ✔ |
| **Power** | Power Steering | ✔ |
| | Power Brakes | ✔ |
| | Power Windows | ✔ |
| | Power Locks | ✔ |
| | Power Mirrors | ✔ |
| | Power Driver Seat | ✔ |
| | Power Passenger Seat | ✔ |
| | Power Trunk/Gate Release | ✔ |
| **Decor/Convenience** | Air Conditioning | ✔ |
| | Climate Control | ✔ |
| | Tilt Wheel | ✔ |
| | Cruise Control | ✔ |
| | Rear Defogger | ✔ |
| | Intermittent Wipers | ✔ |
| | Console/Storage | ✔ |
| | Overhead Console | ✔ |
| | Keyless Entry | ✔ |
| | Message Center | ✔ |
| | Home Link | ✔ |
| | Wood Interior Trim | ✔ |
| **Seating** | Bucket Seats | ✔ |
| | Reclining/Lounge Seats | 🗐 |
| | Leather Seats | 🗐 |
| | Heated Seats | 🗐 |
| **Radio** | AM Radio | ✔ |
| | FM Radio | ✔ |
| | Stereo | ✔ |
| | Search/Seek | ✔ |

To the left is the equipment of the loss vehicle that PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION provided to CCC.

✔ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

🗐 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


 VEHICLE INFORMATION

**VEHICLE EQUIPMENT**

| | | |
|---|---|---|
| | Cassette | ✔ |
| | Steering Wheel Touch Controls | ✔ |
| | CD Changer/Stacker | ✔ |
| **Wheels** | Aluminum/Alloy Wheels | ✔ |
| **Roof** | Electric Glass Roof | 🗐 |
| **Safety/Brakes** | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Anti-lock Brakes (4) | ✔ |
| | 4-wheel Disc Brakes | ✔ |
| | Front Side Impact Air Bags | ✔ |
| | Head/Curtain Air Bags | ✔ |
| | Positraction | ✔ |
| | Alarm | ✔ |
| | Traction Control | ✔ |
| | Stability Control | ✔ |
| **Exterior/Paint/Glass** | Dual Mirrors | ✔ |
| | Heated Mirrors | ✔ |
| | Body Side Moldings | 🗐 |
| | Privacy Glass | ✔ |
| | Fog Lamps | ✔ |
| | Luggage/Roof Rack | 🗐 |
| | Rear Spoiler | ✔ |
| | Rear Window Wiper | ✔ |
| | Clearcoat Paint | 🗐 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| Mechanical | NORMAL WEAR | | $ 0 |
| Front Tires | MAJOR WEAR | RF - 3/32 LF - 8/32 | - $ 30 |
| Rear Tires | MAJOR WEAR | LR - 5/32 RR -3/32 | - $ 30 |
| Paint | NORMAL WEAR | | $ 0 |
| Body | NORMAL WEAR | | $ 0 |
| Glass | NORMAL WEAR | | $ 0 |
| Interior | NORMAL WEAR | | $ 0 |
| **Total Condition Adjustments** | | | **- $ 60** |

PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Normal Wear condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | UNKNOWN | 133,444 | 148,090 | 121,800 |
| Automatic Transmission | ✔ | ✔ | ✔ | ✔ |
| Overdrive | ✔ | ✔ | ✔ | ✔ |
| 4 Wheel Drive | ✔ | ✔ | ✔ | ✔ |
| Power Steering | ✔ | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ | ✔ |
| Power Driver Seat | ✔ | ✔ | ✔ | ✔ |
| Power Passenger Seat | ✔ | ✔ | ✔ | ✔ |
| Power Trunk/Gate Release | ✔ | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ | ✔ |
| Overhead Console | ✔ | ✔ | ✔ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ | ✔ |
| Message Center | ✔ | ✔ | ✔ | ✔ |
| Home Link | ✔ | ✔ | ✔ | ✔ |
| Wood Interior Trim | ✔ | ✔ | ✔ | ✔ |
| Cloth Seats | ✘ | ✔ | ✔ | ✔ |
| Bucket Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✘ | ✘ | ✘ |
| Leather Seats | ✔ | ✘ | ✘ | ✘ |
| Heated Seats | ✔ | ✘ | ✘ | ✘ |
| AM Radio | ✔ | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ | ✔ |
| CD Player | ✘ | ✔ | ✔ | ✔ |
| Cassette | ✔ | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ | ✔ |
| CD Changer/Stacker | ✔ | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ | ✔ |
| Electric Glass Roof | ✔ | ✘ | ✘ | ✘ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ | ✔ |

**Comp 1**   Updated Date: 12/23/2018
**2008 Lexus Rx 350 Awd 6 3.5l**
**Gasoline Sfi**
**VIN** 2T2HK31U78C072455
**Dealership** Jt Automart
**Telephone** (919) 775-1517
**Source** Autotrader
**Stock #** 14832
**Distance from Fayetteville, NC**
22 Miles - Sanford, NC

**Comp 2**   Updated Date: 12/09/2018
**2008 Lexus Rx 350 Awd 6 3.5l**
**Gasoline Sfi**
**VIN** 2T2HK31UX8C087595
**Dealership** Empire Motors Inc.
**Telephone** (919) 779-9222
**Source** Truecar
**Stock #** 087595
**Distance from Fayetteville, NC**
48 Miles - Raleigh, NC

**Comp 3**   Updated Date: 11/03/2018
**2008 Lexus Rx 350 Awd 6 3.5l**
**Gasoline Sfi**
**VIN** 2T2HK31UX8C084471
**Dealership** Gr Motor Company (nc)
**Telephone** (919) 977-1462
**Source** Truecar
**Stock #** 4257
**Distance from Fayetteville, NC**
48 Miles - Garner, NC

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

¹The **Condition Adjustment** sets that comparable vehicle to Normal Wear condition, which the loss vehicle is also

 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Passenger Air Bag | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ | ✔ |
| Head/Curtain Air Bags | ✔ | ✔ | ✔ | ✔ |
| Positraction | ✔ | ✔ | ✔ | ✔ |
| Alarm | ✔ | ✔ | ✔ | ✔ |
| Traction Control | ✔ | ✔ | ✔ | ✔ |
| Stability Control | ✔ | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Heated Mirrors | ✔ | ✔ | ✔ | ✔ |
| Body Side Moldings | ✔ | ✘ | ✘ | ✘ |
| Privacy Glass | ✔ | ✔ | ✔ | ✔ |
| Fog Lamps | ✔ | ✔ | ✔ | ✔ |
| Luggage/Roof Rack | ✔ | ✘ | ✘ | ✔ |
| Rear Spoiler | ✔ | ✔ | ✔ | ✔ |
| Rear Window Wiper | ✔ | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✘ | ✘ | ✘ |
| **List Price** | | $ 9,727 | $ 8,999 | $ 10,980 |
| **Adjustments:** | | | | |
| Options | | + $ 693 | + $ 693 | + $ 660 |
| Mileage | | - $ 513 | + $ 215 | - $ 1,008 |
| Condition¹ | | - $ 732 | - $ 732 | - $ 732 |
| **Adjusted Comparable Value** | | **$ 9,175** | **$ 9,175** | **$ 9,900** |

compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 COMPARABLE VEHICLES

## ADDITIONAL COMPARABLE VEHICLES

| Source | Vehicle | Price | Adjusted Comparable Value |
|---|---|---|---|
| **Comp 4** | | | |
| Source: Dealer Ad | **2008 Lexus Rx 350 Awd 6** | $ 10,299 | $ 11,389 |
| Maxx Used Cars | **3.5l Gasoline Sfi** | (List) | |
| Pittsboro, NC | Odometer: 172,800 | | |
| (919) 250-8208 | VIN: 2T2HK31U18C073536 | | |
| 49 Miles From Fayetteville, NC | Updated Date: 10/22/2018 | | |

**Additional Comparable Vehicles** are in summary format, but are adjusted the same as those on the previous page.

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.



# VALUATION NOTES

12/28/2018 11:29 - POADJ CHANGE REQUESTED BY: LENSCH,CALEB

12/28/2018 11:29 - Mileage changed to UNK from 117985

12/28/2018 11:29 - ADJR Z03 CONFIGURATION CHANGE

12/27/2018 12:43 - POADJ CHANGE REQUESTED BY: LENSCH,CALEB

12/27/2018 12:43 - ADJR Z03 CONFIGURATION CHANGE

12/27/2018 12:43 - Condition Comments changed after Valuation

12/27/2018 12:43 - Mileage changed to 117985 from UNK

This Market Valuation Report has been prepared exclusively for use by PEAK
PROPERTY AND CASUALTY INSURANCE CORPORATION, and no other person or
entity is entitled to or should rely upon this Market Valuation Report and/or any of its
contents. CCC is one source of vehicle valuations, and there are other valuation sources
available.

Regulations concerning vehicle value
include North Carolina Administrative
Code Section 11-04.0418.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.


# SUPPLEMENTAL INFORMATION

## 🏛 CARRIER INFORMATION

**Prepared for:**   PEAK PROPERTY AND CASUALTY INSURANCE
CORPORATION

Sentry Consumer #00870

##  VEHICLE HISTORY INFORMATION

### VINguard®

VINguard® Message: VINguard has decoded this VIN without any errors

### Vehicle Market History Information:

| | |
|---|---|
| This vehicle was reported to CCC on 08/06/2016 Location: AutoTrader in FAYETTEVILLE, NC | Mileage: 89984 |
| This vehicle was reported to CCC on 08/06/2016 Location: AutoTrader in FAYETTEVILLE, NC | Mileage: 89984 |
| This vehicle was reported to CCC on 08/06/2016 Location: AutoTrader in FAYETTEVILLE, NC | Mileage: 89984 |
| This vehicle was reported to CCC on 08/12/2016 Location: AutoTrader in FAYETTEVILLE, NC | Mileage: 89984 |
| This vehicle was reported to CCC on 08/12/2016 Location: AutoTrader in FAYETTEVILLE, NC | Mileage: 89984 |
| This vehicle was reported to CCC on 08/12/2016 Location: AutoTrader in FAYETTEVILLE, NC | Mileage: 89984 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | ✓ | No Abandoned Record Found |
| Damaged | ✓ | No Damaged Record Found |
| Fire Damage | ✓ | No Fire Damage Record Found |
| Grey Market | ✓ | No Grey Market Record Found |
| Hail Damage | ✓ | No Hail Damage Record Found |
| Insurance Loss | ✓ | No Insurance Loss Record Found |
| Junk | ✓ | No Junk Record Found |
| Rebuilt | ✓ | No Rebuilt Record Found |
| Salvage | ✓ | No Salvage Record Found |

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | ✓ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ | No Frame Damage Record Found |
| Major Damage Incident | ✓ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ | No Odometer Problem Record Found |
| Recycled | ✓ | No Recycled Record Found |
| Water Damage | ✓ | No Water Damage Record Found |
| Salvage Auction | ✓ | No Salvage Auction Record Found |

| VEHICLE INFORMATION | | RESULTS FOUND |
|---|---|---|
| Accident | ▣ | Accident Record Found |
| Corrected Title | ✓ | No Corrected Title Record Found |
| Driver Education | ✓ | No Driver Education Record Found |
| Fire Damage Incident | ✓ | No Fire Damage Incident Record Found |
| Lease | ✓ | No Lease Record Found |
| Lien | ✓ | No Lien Record Found |
| Livery Use | ✓ | No Livery Use Record Found |
| Government Use | ✓ | No Government Use Record Found |
| Police Use | ✓ | No Police Use Record Found |
| Fleet | ✓ | No Fleet Record Found |
| Rental | ✓ | No Rental Record Found |
| Fleet and/or Rental | ✓ | No Fleet and/or Rental Record Found |
| Repossessed | ✓ | No Repossessed Record Found |
| Taxi use | ✓ | No Taxi use Record Found |
| Theft | ✓ | No Theft Record Found |
| Fleet and/or Lease | ✓ | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ | No Duplicate Title Record Found |

CCC provides PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION information reported by Experian regarding the **2008 Lexus RX 350 (2T2HK31U88C080399)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**
✓ No Event Found
⊘ Event Found
▣ Information Needed

**TITLE CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
INFORMATION FOUND

AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE.** MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

 **FULL HISTORY REPORT RUN DATE: 12/28/2018**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 09/24/2007 | MD | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 11/07/2007 | WASHINGTON, DC | 35 | Motor Vehicle Dept. | TITLE |
| 11/07/2007 | WASHINGTON, DC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/07/2007 | DC | | Motor Vehicle Dept. | PASSED EMISSION INSPECTION |
| 09/20/2008 | WASHINGTON, DC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/15/2009 | DC | | Motor Vehicle Dept. | PASSED EMISSION INSPECTION |
| 09/23/2010 | WASHINGTON, DC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/08/2011 | WASHINGTON, DC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/15/2011 | SILVER SPRING, MD | 49000 | Motor Vehicle Dept. | TITLE |
| 11/16/2011 | STERLING, VA | 51583 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 11/25/2011 | GAINESVILLE, VA | 51438 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 11/25/2011 | GAINESVILLE, VA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/21/2013 | GAINESVILLE, VA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/21/2013 | MANASSAS, VA | 69907 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 11/02/2014 | GAINESVILLE, VA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/19/2015 | GAINESVILLE, VA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/22/2016 | FAYETTEVILLE, NC | 89985 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 08/22/2016 | FAYETTEVILLE, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/01/2016 | NC | | Police Report | LEFT REAR IMPACT COLLISION |
| 09/01/2016 | NC | | Police Report | ACCIDENT REPORTED |
| 10/05/2017 | NC | | Police Report | REAR IMPACT COLLISION |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.



# MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 10/05/2017 | FAYETTEVILLE, NC | | Police Report | ACCIDENT REPORTED |
| 10/30/2017 | FAYETTEVILLE, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/01/2018 | FAYETTEVILLE, NC | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# SUPPLEMENTAL INFORMATION

## SETTLEMENT TRACKING

Complete this form when the file is closed.

SEND TO: CCC INFORMATION SERVICES INC
ATTN: SETTLEMENT TRACKING
100 S. MAIN ST.
SIOUX FALLS SD 57104
FAX: 1-800-621-7070

Claim Representative Settlement Notes:

_____
_____
_____
_____
_____
_____
_____
_____

**Settlement Data**

Request Number:         91283078
Office ID:              036811
Code:                   012C
Insured:                Smith, Leslie
Vehicle:                2008 Lexus RX 350 AWD
Claim Reference:        97A381210A
Adjuster:               Gray, Pamela
Settlement Adjustment:  _____

|  | Report Values | | Settlement Values |
|---|---|---|---|
| Base Valuation: | $ 9,773.00 | | _____ |
| Condition Adjustment : | - $ 60.00 | (+/-) | _____ |
| Prior Damage: | | (-) | _____ |
| Non-Factory Options: | | (+) | _____ |
| Other Pre-Tax Adjustments: | + $ 0.00 | (+/-) | _____ |
| Adjusted Vehicle Value : | $ 9,713.00 | (+) | _____ |
| Vehicular Tax: | 3.00%  + $ 291.39 | (+) | _____ _____% |
| Tax reflects all applicable state, county, municipal taxes. | | | |
| Other Post-Tax Adjustments: | | (+/-) | _____ |
| Total: | $ 10,004.39 | (+) | _____ |
| **Final Settlement Amount:** | | | _____ |

Insured report date: _____/_____/_____     Settlement date: _____/_____/_____
                           mm  dd   yyyy                        mm  dd   yyyy

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# EXHIBIT C

Peak Property and Casualty Insurance Corporation
PO BOX 8042
Stevens Point, WI 54481-9836

May 24, 2019



**Claim Number:** 97A381210-356
Insured:      LESLIE SMITH
Claimant Name:  LESLIE SMITH
Date of Loss:   12/19/2018

LESLIE SMITH

FAYETTEVILLE NC ▮▮▮▮▮▮▮▮

Vehicle: 2008 Lexus RX 350 AWD
VIN:     2T2HK31U88C080399

I'm writing to confirm our total loss offer for your vehicle. Attached is the market report, completed by CCC, for your review. If you don't plan to retain the vehicle, we'll issue payment once we receive the title and/or paperwork necessary to transfer vehicle ownership.

Here's a breakdown of the settlement options:

|  | **Insurance Retains Salvage:** |  | **Owner Retains Salvage:** |
|---|---|---|---|
| ACV |  | $9,713.00 |  | $9,713.00 |
| Unrelated Prior Damage | - | $84.99 | - | $84.99 |
| Revised ACV |  | $9,628.01 |  | $9,628.01 |
| Fees | + | $72.00 | + | $0.00 |
| Keys | - | $115.00 | - | $115.00 |
| Salvage | - | $0.00 | - | $2,637.00 |
| Deductible | - | $500.00 | - | $500.00 |
| Gross settlement |  | $908,501.00 |  | $6,376.01 |

If you have additional information you'd like us to consider in our evaluation, please send it to me via fax, mail, or email. Be sure to include the claim number for easy identification.

If you have questions or wish to discuss this further, please contact me. Thank you.

**Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.**

Caleb Lensch, Claims Rep - AMD
**Peak Property and Casualty Insurance Corporation**
A Member of the Sentry Insurance Group
800-334-0090 Ext 4595387
888-729-2225 Fax
Caleb.Lensch@sentry.com

Enclosure:     CCC Market Survey

---

97A381210

DOCCLMS

Peak Property and Casualty
Insurance Corporation
PO BOX 8042
Stevens Point WI  54481-9836

*Please fold for return envelope window. 356*